**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Everhart v. Coshocton Cty. Mem. Hosp.*, **Slip Opinion No. 2023-Ohio-4670.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-4670

EVERHART, INDIVIDUALLY AND AS ADMR. OF THE ESTATE OF EVERHART, APPELLEE, *v.* COSHOCTON COUNTY MEMORIAL HOSPITAL ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Everhart v. Coshocton Cty. Mem. Hosp.*, **Slip Opinion No. 2023-Ohio-4670.]**

*Statutes of repose—R.C. 2305.113—Wrongful-death claims based on medical care are "medical claims" as defined by R.C. 2305.113(E) and are therefore subject to the four-year medical-claims statute of repose set forth in R.C. 2305.113(C)—Nothing in statutory wrongful-death chapter, R.C. Chapter 2125, removes wrongful-death claims based on medical care from scope of R.C. 2305.113(C)'s statute of repose—Judgment reversed and cause remanded.*

(Nos. 2022-0407 and 2022-0424—Submitted February 28, 2023—Decided December 28, 2023.)

APPEAL from and CERTIFIED by the Court of Appeals for Franklin County,

No. 21AP-74, 2022-Ohio-629.

_____

**FISCHER, J.**

{¶ 1} Once again, we are asked to analyze the medical-claim statute of repose in R.C. 2305.113(C), and once again, we hold that it means what it says. The broad definition of "medical claim" that applies to the statute of repose clearly and unambiguously includes wrongful-death claims based on medical care, and nothing in Ohio's statutory wrongful-death chapter negates their inclusion. Therefore, the statute of repose applies to such claims. Because the Tenth District Court of Appeals held otherwise, we reverse.

## I.  Facts and Procedural Background

{¶ 2} On December 21, 2003, Todd Everhart was involved in an automobile accident and was transported to Coshocton County Memorial Hospital ("Coshocton Hospital"). At the hospital, doctors took x-rays of Mr. Everhart's chest. Mr. Everhart was not admitted to Coshocton Hospital but was instead transferred by helicopter to the Ohio State University Medical Center. Later, appellant Joseph Mendiola, M.D. ("Dr. Mendiola"), who was working at Coshocton Hospital, read the chest x-rays and dictated a report noting a "focal area of increased opacity in the lateral aspect of the right upper lobe, which may represent a lung contusion." Dr. Mendiola's report was distributed to various departments and physicians in accordance with hospital procedures. Appellant Mohamed Hamza, M.D. ("Dr. Hamza"), was assigned as backup physician to Mr. Everhart. A backup physician was assigned to Coshocton Hospital emergency-room patients who otherwise had no primary-care provider, allowing the patient to contact that physician with any questions he or she had after discharge. Although Dr. Hamza was assigned as the backup physician, he denies ever receiving the x-rays. After a stay at the Ohio State University Medical Center, Mr. Everhart was discharged and recovered from his injuries.

{¶ 3} Nearly three years later, Mr. Everhart returned to Coshocton Hospital complaining of abdominal pain, blood in his urine, and a cough. Coshocton Hospital personnel performed a CT scan and took x-rays, which revealed a large mass in the right upper lobe of Mr. Everhart's right lung. Further testing established that he was suffering from advanced-stage lung cancer. Just two months later, Mr. Everhart died.

{¶ 4} On January 25, 2008, Mr. Everhart's wife, appellee, Machelle Everhart, filed a complaint in her individual capacity and as administrator of Mr. Everhart's estate against Coshocton Hospital, Dr. Hamza, and Dr. Mendiola, ("the Coshocton defendants") asserting claims of medical malpractice and wrongful death. Mrs. Everhart also included multiple other defendants who have since been dismissed from the case or are not parties to this appeal. Mrs. Everhart alleged, among other things, that the Coshocton defendants had deviated from the accepted standard of care when they failed to follow up on or inform Mr. Everhart of the lung opacity that was visible in the chest x-rays taken at Coshocton Hospital in 2003.

{¶ 5} Several years of litigation followed, including a separate appeal to the Tenth District, *see* 10th Dist. Franklin No. 12AP-75, 2013-Ohio-2210. In 2017, the Coshocton defendants sought leave to file motions for judgment on the pleadings, asserting that the lawsuit was barred by the four-year statute of repose for medical claims in R.C. 2305.113(C). The Coshocton defendants argued that before this court decided *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, in 2016, it was unclear whether the statute of repose was applicable to claims that were filed within the statute of limitations. And because the Coshocton defendants did not include the statute of repose as an affirmative defense in their original answers, they also sought leave to file amended answers.

{¶ 6} On November 30, 2017, the trial court stayed proceedings in the case indefinitely based on Coshocton Hospital's involvement in pending bankruptcy

proceedings. The court reactivated the case in April 2019 and granted the Coshocton defendants' motions for leave to file amended answers and motions for leave to file motions for judgment on the pleadings in August 2020. Mrs. Everhart filed a motion for leave to file a third amended complaint. In her motion, Mrs. Everhart argued that the amended complaint would support her argument that the defendants were not entitled to judgment on the pleadings based on the medical-claims statute of repose because her claims were based on ongoing acts of negligence that occurred less than four years before she filed her first complaint. The court then denied Mrs. Everhart's motion for leave to file a third amended complaint in December 2020, and it granted Dr. Mendiola's motion for judgment on the pleadings in January 2021.

{¶ 7} On appeal, the Tenth District held that the medical-claim statute of repose in R.C. 2305.113(C) does not apply to wrongful-death claims, based partially on this court's decisions in *Klema v. St. Elizabeth's Hosp.*, 170 Ohio St. 519, 166 N.E.2d 765 (1960), and *Koler v. St. Joseph Hosp.*, 69 Ohio St.2d 477, 432 N.E.2d 821 (1982), in which this court held that wrongful-death claims are distinct from medical-malpractice claims. The Tenth District reversed the decision of the trial court on that basis and held that Mrs. Everhart's remaining assignment of error, which asserted that the trial court erred by denying her motion for leave to file a third amended complaint, was moot.

{¶ 8} The Tenth District certified a conflict between its decision in this case and three other appellate-court decisions. In *Smith v. Wyandot Mem. Hosp.*, 2018-Ohio-2441, 114 N.E.3d 1224 (3d Dist.), and *Mercer v. Keane*, 2021-Ohio-1576, 172 N.E.3d 1101 (5th Dist.), the Third and Fifth District Courts of Appeals each determined that the medical-claim statute of repose does apply to wrongful-death claims based on the language of R.C. 2305.113 and this court's decisions in *Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291 and *Antoon*. The *Mercer* court also relied on our decision in *Wilson v. Durrani*, 164 Ohio St.3d 419,

4

2020-Ohio-6827, 173 N.E.3d 448. In *Martin v. Taylor*, 11th Dist. Lake No. 2021-L-046, 2021-Ohio-4614, the Eleventh District Court of Appeals also held that the medical-claim statute of repose applies to wrongful-death claims based on the plain language of the statute.

**{¶ 9}** Coshocton Hospital and Dr. Hamza filed a notice of appeal to this court and notice of a certified conflict between the Tenth District's decision in this case and the decisions of the Third, Fifth, and Eleventh Districts in *Smith*, *Mercer*, and *Martin*, respectively. Dr. Mendiola filed a separate notice of appeal and notice of a certified conflict. We determined that a conflict exists and also accepted Coshocton Hospital and Dr. Hamza's appeal and Dr. Mendiola's appeal. 167 Ohio St.3d 1441, 2022-Ohio-2162, 189 N.E.3d 816; 167 Ohio St.3d 1442, 2022-Ohio-2162, 189 N.E.3d 818. We sua sponte consolidated the two cases for briefing and ordered the parties to brief the conflict question certified by the Tenth District: "Does the statute of repose for medical claims, set forth under R.C. 2305.113(C), apply to statutory wrongful death claims?" *See* 167 Ohio St.3d 1441, 2022-Ohio-2162, 189 N.E.3d 816.

## II. Standard of Review

**{¶ 10}** Statutory interpretation is an issue of law. *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 9. As an issue of law, we review this matter de novo. When interpreting a statute, we first look to the language of the statute itself, and if the language is clear and unambiguous, we must apply it as written *Id.*; *see also State v. Ashcraft*, __ Ohio St.3d __, 2022-Ohio-4611, __ N.E.3d __, ¶ 7; *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, ¶ 11.

## III. Analysis

### A. *Plain Language of R.C. 2305.113(C)'s Statute of Repose*

**{¶ 11}** To determine which causes of action the medical-claim statute of repose applies to, we must look first to the language of the statute. R.C.

2305.113(C)(1) states: "No action upon a medical, dental, optometric, or chiropractic claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim." The statute goes on to broadly define "medical claim" as

> *any claim that is asserted in any civil action against a physician*, podiatrist, *hospital*, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and *that arises out of the medical diagnosis*, *care*, or *treatment* of any person.

(Emphasis added.) R.C. 2305.113(E)(3).

{¶ 12} Since the General Assembly enacted the medical-claim statute of repose, this court has decided multiple cases analyzing it—each time declaring that R.C. 2305.113(C) means what it says. *See Antoon*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, at ¶ 22-23; *Wilson*, 164 Ohio St.3d 419, 2020-Ohio-6827, 173 N.E.3d 448, at ¶ 24. In *Antoon*, this court considered whether the medical-claim statute of repose applies to vested medical-malpractice claims that were filed before the statute of repose expired but were subsequently dismissed and refiled after the statute of repose expired. We held that R.C. 2305.113(C) "is a true statute of repose that applies to both vested and nonvested claims," *id.* at ¶ 35, and that "the plain language of the statute is clear, unambiguous, and means what it says," *id.* at ¶ 23.

**{¶ 13}** We reiterate here that R.C. 2305.113(C) is a true statute of repose and that it means what it says. Wrongful-death claims based on medical care are clearly and expressly included in R.C. 2305.113(E)(3)'s broad definition of "medical claim." They are claims that are "asserted in any civil action against a physician * * * that arise[] out of the medical diagnosis, care, or treatment" of a patient. *Id.* Therefore, they are expressly within the scope of the medical-claim statute of repose unless another statutory provision negates their inclusion.

**{¶ 14}** The dissenting opinions accuse this court of legislating from the bench and "bootstrapping" legislation to reach a desired result. First dissenting opinion, ¶ 37; second dissenting opinion, ¶ 89. To the contrary, we are simply applying the plain language of R.C. 2305.113 as the General Assembly has enacted it. In fact, it is the dissenting opinions that elevate statutory structure over plain language, *see, e.g.*, first dissenting opinion at ¶ 38, 62; second dissenting opinion at ¶ 110, and use policy considerations in an effort to reach a desired result, second dissenting opinion at ¶ 113-117.

**{¶ 15}** The first dissenting opinion argues that the General Assembly intended for medical claims to be limited to those claims that fall within the common-law definition of "medical malpractice" or that are *expressly* listed in R.C. 2305.113(E)(3)'s definition of "medical claim." First dissenting opinion at ¶ 35. Based on this premise, the first dissenting opinion argues that in *Thompson v. Community Mental Health Ctrs. of Warren Cty., Inc.*, 71 Ohio St.3d 194, 642 N.E.2d 1102 (1994), this court already rejected the reasoning underlying our holding in this case, because *Thompson* held that the adoption of a definition for "medical claims" did not expand the definition of "malpractice" to claims beyond those included at common law, first dissenting opinion at ¶ 51, citing *Thompson* at 195-196. But we issue no holding in this case regarding the definition of "malpractice." Rather, this case concerns medical claims, which are defined by statute to be broader than common-law medical-malpractice claims.

**{¶ 16}** If it had truly been the General Assembly's intent to limit medical claims to claims that fall within the common-law definition of "medical malpractice" or that are expressly listed in the definition of "medical claim," as the first dissenting opinion posits, it is certainly not evident from the text of the statute. But instead of applying the plain text of the statute as this court is required to do, *see State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 9 ("we first must look at the language of the statute itself. * * * If the language is clear and unambiguous, we must apply it as written"), the first dissenting opinion attempts to determine what the General Assembly *intended* to enact, instead of what it *did* enact, *see Sears v. Weimer*, 143 Ohio St. 312, 316, 55 N.E.2d 413 (1944), quoting 37 Ohio Jurisprudence, Statutes, Section 278, at 514-517 (1934) (" 'Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation. To interpret what is already plain is not interpretation, but legislation, which is not the function of the courts, but of the general assembly. * * * An unambiguous statute is to be applied, not interpreted' " [ellipsis added in *Sears*]).

**{¶ 17}** The second dissenting opinion also makes much of the idea that claims for medical malpractice are "*fundamentally different* from wrongful-death claims based on alleged medical negligence" and argues that the General Assembly wanted different statutes of repose to apply to the different types of claims. (Emphasis added.) Second dissenting opinion at ¶ 87. But the second dissenting opinion ignores the fact that it was the General Assembly that decided to include both types of claims within R.C. 2305.113(E)(3)'s definition of "medical claim" and that this court must apply the statute as it is written.

### B. R.C. Chapter 2125—Wrongful Death

**{¶ 18}** Instead of examining the language of the medical-claim statute of repose, the Tenth District looked exclusively to the language of R.C. Chapter 2125, which governs wrongful-death claims. But a review of that chapter reveals that

there is no separate statute of repose for all wrongful-death actions, and nothing in that chapter says that the medical-claim statute of repose does not apply to wrongful-death claims.

{¶ 19} Here, Mrs. Everhart argues that for a statute of repose to apply to wrongful-death claims, it must be included in R.C. Chapter 2125 because, she contends, wrongful-death claims are governed solely by that chapter. But we do not read statutes in a vacuum. " 'It is a well-settled rule of statutory interpretation that statutory provisions be construed together and the Revised Code be read as an interrelated body of law.' " *State v. Pribble*, 158 Ohio St.3d 490, 2019-Ohio-4808, 145 N.E.3d 259, ¶ 12, quoting *State v. Moaning*, 76 Ohio St.3d 126, 128, 666 N.E.2d 1115 (1996). " 'This court in the interpretation of related and co-existing statutes must harmonize and give full application to all such statutes unless they are irreconcilable and in hopeless conflict.' " *United Tel. Co. of Ohio v. Limbach*, 71 Ohio St.3d 369, 372, 643 N.E.2d 1129 (1994), quoting *Johnson's Mkts., Inc. v. New Carlisle Dept. of Health*, 58 Ohio St.3d 28, 35, 567 N.E.2d 1018 (1991). In this case, far from being in hopeless conflict, the medical-claim statute of repose and the wrongful-death statute do not conflict in any way. The medical-claim statute of repose clearly applies to wrongful-death claims based on medical care, and the statutory wrongful-death chapter does absolutely nothing to remove those claims from the scope of the medical-claim statute of repose.

{¶ 20} The Tenth District below relied on the fact that the wrongful-death chapter contains only one statute of repose, which applies to wrongful-death claims based on product liability. The Tenth District held that the wrongful-death chapter does not provide any other time limitations, so under the interpretive canon expressio unius est exclusio alterius, no other time limitations can be applied. That analysis is a misapplication of that canon. This court has held that a series of terms is required for the canon expressio unius est exclusio alterius to apply. *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 34-37.

" 'The canon depends on identifying a series of two or more terms or things that should be understood to go hand in hand.' " *Id.* at ¶ 36, quoting *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 81, 122 S.Ct. 2045, 153 L.Ed.2d 82 (2002). In this case, there is no series of two or more things in the wrongful-death chapter. The existence of one statute of repose in the chapter for wrongful-death claims does not mean that other statutes of repose throughout the Revised Code do not apply to such claims.

### *C.* Klema *and* Koler

**{¶ 21}** The Tenth District also relied on the fact that in both *Klema*, 170 Ohio St. 519, 166 N.E.2d 765, and *Koler*, 69 Ohio St.2d 477, 432 N.E.2d 821, this court held that wrongful-death claims are separate and distinct from the medical-malpractice claims on which they rely. 2022-Ohio-629, 186 N.E.3d 232, ¶ 38-39. The United States District Court for the Northern District of Ohio employed the same reasoning when it reached a similar conclusion in *Daniel v. United States*, 977 F.Supp.2d 777 (N.D.Ohio 2013). In *Daniel*, the federal district court pointed to *Klema* and *Koler*, and it stated that in *Koler*, this court concluded that "absent clear legislation to the contrary, wrongful death actions [are] governed only by provisions in the wrongful death statute." *Daniel* at 782. Therefore, the federal district court determined that the " 'medical claim' statute of repose, set forth in another division of the code and not in the wrongful death division, [did] not apply to [the] plaintiff's wrongful death claim." *Id.* at 783. But this reliance on *Klema* and *Koler* was misplaced.

**{¶ 22}** In *Klema*, this court held that the one-year statute of limitations for medical-malpractice claims, found in former R.C. 2305.11, did not apply to wrongful-death claims, because a wrongful-death claim is distinct from a claim for medical malpractice and the wrongful-death statute contained its own two-year statute of limitations. *Klema* at 521-522. Twenty-two years later, the *Koler* defendants argued that this court's holding in *Klema* no longer applied because the

10

General Assembly had amended R.C. 2305.11. *See* Am.Sub.H.B. No. 682, 136 Ohio Laws, Part II, 2809, 2810-2811. As amended, the one-year statute of limitations still applied to "malpractice" claims, but the legislature added a four-year statute of repose for "medical claims." *Koler* at 480. The defendants in *Koler* argued that the General Assembly intended for "malpractice" in the statute of limitations to mean the same thing as "medical claims" in the statute of repose and that because the plaintiffs' wrongful-death claims were "medical claims," they were subject to the one-year statute of limitations for "malpractice" claims. *Id.* This court disagreed, holding that the one-year statute of limitations did not apply to wrongful-death claims, because those claims were not malpractice claims, despite the amendments to R.C. 2305.11. *Id.* at 481. This court did not address whether wrongful-death claims are "medical claims," but the court did note that R.C. 2305.11 differentiated between "malpractice" claims and "medical claims." *Id.*

{¶ 23} Both dissenting opinions rely heavily on *Klema* and *Koler*. The first dissenting opinion argues that this court directly addressed whether wrongful-death claims are "medical claims" in *Koler*, because according to that dissent, "We held that no matter what kind of effect the broadly worded definition of "medical claim" might have on the reach of the medical-malpractice limitations statute in former R.C. 2305.11 (now R.C. 2305.113), it did not change the meaning of 'malpractice' in former R.C. 2305.11(A) (still R.C. 2305.11(A)) and therefore, the one-year statute of limitations set forth in R.C. 2305.11(A) could not be interpreted to apply to wrongful-death claims unless explicitly stated." First dissenting opinion at ¶ 72, citing *Koler* at 481.

{¶ 24} Contrary to assertions in the first dissenting opinion, *Klema* and *Koler* are not on point here, because they addressed a completely different issue, and this court never held in *Klema* or *Koler* that a wrongful-death claim cannot be a "medical claim" as R.C. 2305.113(E)(3) defines that term. Rather, in *Klema* and *Koler*, the court refused to apply the medical-*malpractice* statute of *limitations* to

wrongful-death claims because wrongful-death claims had their own two-year statute of limitations. "Malpractice" was undefined in R.C. 2305.11, *see Koler* at 481, and this court held that it did not include wrongful-death claims, because those claims were distinct from malpractice claims. In contrast, in this case, "medical claim" is defined, and it is defined very broadly to include wrongful-death claims based on medical care. *See* R.C. 2305.113(E)(3). Moreover, the wrongful-death chapter does not have its own statute of repose beyond the one that applies to product-liability claims. *See* R.C. 2125.02(F)(2)(a).

{¶ 25} The second dissenting opinion also relies on *Klema* and *Koler*, noting that in those cases, this court held that the statute of limitations for malpractice actions did not apply to wrongful-death actions, even if the death was caused by medical malpractice. Second dissenting opinion at ¶ 108, 109, citing *Klema*, 170 Ohio St. 519, 166 N.E.2d 765, at paragraph one of the syllabus, and *Koler*, 69 Ohio St.2d at 478-481, 432 N.E.2d 821. That opinion says that in *Koler*, this court continued to hold that wrongful-death actions predicated on medical negligence are governed by the wrongful-death statute of limitations, despite the broader definition of "medical claim" that was added to the malpractice statute in 1975. Second dissenting opinion at ¶ 109. But this court's holdings in *Klema* and *Koler* regarding the medical-malpractice statute of limitations are no longer good law, because the General Assembly has amended that statute of limitations since those cases were decided. Am.Sub.H.B. No. 327, 142 Ohio Laws, Part II, 3322. In *Klema* and *Koler*, this court determined that the "medical malpractice" statute of limitations in R.C. 2305.11(A) did not apply to wrongful-death claims. But since those cases were decided, R.C. 2305.11(A) has been amended to apply only to malpractice claims that are *not* medical claims. Am.Sub.H.B. No. 327, 142 Ohio Laws at 3322. Medical claims now have their own one-year statute of limitations, which is set out in R.C. 2305.113(A), and this court has never considered whether that statute of limitations applies to wrongful-death claims based on medical care.

*Klema* and *Koler* are not instructive in this case.

### D. Derivative Claims

{¶ 26} Further, the Tenth District relied on the fact that wrongful-death claims are not listed among the derivative claims for relief set out in R.C. 2305.113(E)(3)'s definition of "medical claim." 2022-Ohio-629, 186 N.E.3d 232, at ¶ 25-26. R.C. 2305.113(E)(3)(a) explains that the term "medical claim" includes "[d]erivative claims for relief that arise from the medical diagnosis, care, or treatment of a person." R.C. 2305.113(E)(7) goes on to define "derivative claims for relief" as claims that

> include, but are not limited to, claims of a parent, guardian, custodian, or spouse of an individual who was the subject of any medical diagnosis, care, or treatment, dental diagnosis, care, or treatment, dental operation, optometric diagnosis, care, or treatment, or chiropractic diagnosis, care, or treatment, that arise from that diagnosis, care, treatment, or operation, and that seek the recovery of damages for any of the following:
>
> (a) Loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, or any other intangible loss that was sustained by the parent, guardian, custodian, or spouse;
>
> (b) Expenditures of the parent, guardian, custodian, or spouse for medical, dental, optometric, or chiropractic care or treatment, for rehabilitation services, or for other care, treatment, services, products, or accommodations provided to the individual who was the subject of the medical diagnosis, care, or treatment, the dental diagnosis, care, or treatment, the dental operation, the optometric diagnosis, care, or treatment, or the chiropractic

diagnosis, care, or treatment.

**{¶ 27}** The Tenth District held that because the definition of "derivative claims for relief" does not specifically list claims for wrongful death, the canon expressio unius est exclusio alterius excludes them. 2022-Ohio-629, 186 N.E.3d 232, at ¶ 26. But there are two reasons why wrongful-death claims would not be included in the definition of "derivative claims for relief." First, as the Tenth District pointed out, wrongful-death claims are independent causes of action, not derivative actions. *Id*., citing *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 637 N.E.2d 917 (1994); *see also Klema*, 170 Ohio St. at 521-522, 166 N.E.2d 765. Second, the types of loss listed in R.C. 2305.113(E)(7)(a) and the expenditures listed in division (E)(7)(b) are not causes of action, but types of injuries used to determine the amount of damages. *See* R.C. 2305.113(E)(7) (" 'Derivative claims for relief' include, but are not limited to, claims of a * * * spouse of an individual who was the subject of any medical diagnosis * * * and that seek the recovery of damages for any of the following"). In fact, the injuries listed in division (E)(7)(a) are also used to determine damages in wrongful-death claims. The wrongful-death statute, R.C. 2125.02, states in part:

> (D) Compensatory damages may be awarded in a civil action for wrongful death and may include damages for the following:
>
> (1) Loss of support from the reasonably expected earning capacity of the decedent;
>
> (2) Loss of services of the decedent;
>
> (3) Loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, suffered by the surviving spouse, dependent children, parents, or

14

next of kin of the decedent * * *.

Furthermore, it is irrelevant that wrongful-death claims are not included in the definition of "derivative claims for relief," because the statutory definition of "medical claim" is not limited to derivative actions. *See* R.C. 2305.113(E)(3). Derivative actions are only the second portion of the definition; the first portion of the definition is expansive, and it clearly includes wrongful-death claims arising out of medical care.

*E. The Borrowing Statute*

{¶ 28} Finally, the Tenth District relied on the language of the borrowing statute in R.C. 2305.03(A), which states: "Except as provided in division (B) of this section and unless a different limitation is prescribed by statute, a civil action may be commenced only within the period prescribed in sections 2305.04 to 2305.22 of the Revised Code." The Tenth District, quoting R.C. 2305.03(A), held that the medical-claim statute of repose found in R.C. 2305.113 does not apply because " 'a different limitation is prescribed by statute' " in R.C. 2125.02. (Emphasis deleted.) 2022-Ohio-629, 186 N.E.3d 232, at ¶ 28. But that provision is a statute of *limitations*, not a statute of repose. As we explained in *Antoon*:

> The differences between statutes of repose and statutes of limitations have been recognized for nearly 40 years. [*CTS Corp. v. Waldburger*, 573 U.S. 1, 14, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014)]. A statute of limitations establishes "a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." *Black's Law Dictionary* 1636 (10th Ed.2014). A statute of repose bars "any suit that is brought after a specified time since the defendant acted * * * even if this period ends before the plaintiff has suffered a resulting

injury." *Id.* at 1637.

(Ellipsis added in *Antoon*.) 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, at ¶ 11. Statutes of limitations and statutes of repose serve different purposes, and the imposition of one does not bar the imposition of another. Furthermore, even if there were no borrowing statute, the medical-claim statute of repose would still apply to wrongful-death claims based on medical care because those types of claims are expressly included in the broad statutory definition of "medical claim."

{¶ 29} The first dissenting opinion argues that we are claiming that a statute of repose is not a "limitation" within the meaning of R.C. 2305.03(A), because it is called a statute of *repose* rather than a statute of *limitations*. First dissenting opinion at ¶ 66. This is a gross misstatement of our holding in this case. The relevant argument here says that when applying the borrowing statute in this case, the two-year statute of limitations for wrongful-death claims, found in R.C. 2125.02, is the "different limitation," *not* the four-year statute of repose for medical claims. We are certainly not saying that a statute of limitations is not a "limitation." Nor are we saying that a statute of repose is not a limitation. Rather, we are merely stating that a statute of limitations does not bar the application of a statute of repose, which is a different kind of limitation.

*F. Counterarguments in the Second Dissenting Opinion*

{¶ 30} The second dissenting opinion asserts that this court's application of the statute of repose violates the open-courts or right-to-remedy provisions of Article I, Section 16 of the Ohio Constitution. Second dissenting opinion at ¶ 121. But this court expressly rejected that argument in *Ruther*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, at ¶ 10-15.

{¶ 31} Furthermore, the second dissenting opinion argues that this case should be dismissed as improvidently accepted because the trial court refused to allow Everhart to amend her complaint, and therefore, it argues, we cannot fairly

determine whether the complaint was filed within four years of the alleged wrongdoing. Second dissenting opinion at ¶ 86, 119. But that issue is not before us.

{¶ 32} Everhart appealed the decision of the trial court to the Tenth District, raising two assignments of error. First, she argued that the trial court erred when it applied the medical-claim statute of repose to her wrongful-death claim. 2022-Ohio-629, 186 N.E.3d 232, at ¶ 11. And second, she argued that the trial court erred when it denied her leave to file a third amended complaint. *Id*. Finding that the medical-claim statute of repose does not apply to wrongful-death claims, the Tenth District reversed the decision of the trial court and declined to address the second assignment of error. *Id*. at ¶ 54-55. The only issue before this court is the one that the Tenth District decided: whether the medical-claim statute of repose applies to wrongful-death claims. Because we hold that it does, we must remand the case to the Tenth District for it to address Everhart's assignment of error that the trial court erred when it denied her request to amend her complaint for a third time. That issue is not before this court and must be resolved by the Tenth District.

### IV. Conclusion

{¶ 33} Wrongful-death claims based on medical care are clearly and unambiguously included in the broad definition of "medical claim" that applies to the statute of repose found in R.C. 2305.113(C). There are no separate statutes of repose for wrongful-death claims beyond those that apply to product-liability claims and certain premises-liability actions, and nothing in R.C. Chapter 2125 removes wrongful-death claims from the scope of R.C. 2305.113(C)'s statute of repose. Statutory provisions must be construed together, and the Revised Code must be read as an interrelated body of law. In this case, no conflict exists between the medical-claim statute of repose and the Revised Code chapter governing wrongful-death claims. The wrongful-death statute cannot remove wrongful-death claims based on medical care from the scope of the medical-claim statute of repose

simply by remaining silent. Accordingly, we answer the certified-conflict question in the affirmative, reverse the judgment of the Tenth District Court of Appeals, and remand this matter to that court for it to address Mrs. Everhart's remaining assignment of error.

Judgment reversed<br>and cause remanded.

KENNEDY, C.J., and DEWINE and DETERS, JJ., concur.

DONNELLY, J., dissents, with an opinion joined by STEWART, J.

BRUNNER, J., dissents, with an opinion.

––––––––––––––

**DONNELLY, J., dissenting.**

{¶ 34} I agree with the second dissenting opinion that the language of the two statutory schemes at issue in this appeal—R.C. Chapter 2125 and R.C. 2305.113—do not allow the majority's conclusion. Perhaps the majority is right that R.C. 2305.113(C) "means what it says," majority opinion, ¶ 1, 12-13, but the problem is that R.C. 2305.113 does not say what the majority proclaims, and it does not mean what the majority infers.

{¶ 35} Contrary to the majority's claims, R.C. 2305.113 governs limitations periods for common-law medical-malpractice actions. In the definition of "medical claim" in R.C. 2305.113(E)(3), the General Assembly has expanded the common-law definition of "medical malpractice" to include a variety of common-law personal-injury and derivative claims, as well as one statutorily derived cause of action under R.C. 3721.17. However, the General Assembly has chosen not to include the statutorily created cause of action for wrongful death among the claims listed in R.C. 2305.113(E)(3).

{¶ 36} Under R.C. 2125.02, a wrongful-death action can generally be brought within two years of a decedent's death, irrespective of what kind of underlying wrongful act—including medical malpractice—caused the death.

Because wrongful death is a statutorily created cause of action, rules limiting common-law causes of action are irrelevant, and exceptions or other limitations to the wrongful-death statutory scheme must be explicit. The General Assembly has chosen to enact two statutes of repose that make such explicit exceptions for wrongful acts causing death: one in R.C. 2125.02(F)(2) for wrongful acts related to products liability and one in R.C. 2305.131 for wrongful acts related to defective construction. The General Assembly has not made any such exception for wrongful acts related to medical malpractice.

**{¶ 37}** Both R.C. 2305.113 and R.C. Chapter 2125 mean what they say—that is, they apply to completely distinct causes of action and their limitations periods do not apply to each other. Thus, the medical-malpractice statute of repose does not affect the wrongful-death cause of action at issue here. No matter what we think about the possible policy goals behind R.C. 2305.113 or R.C. Chapter 2125, it is not our job to extend those perceived policy goals any further than the statutory language actually allows. I respectfully dissent, and I would affirm the judgment of the Tenth District Court of Appeals.

### I. Introduction

**{¶ 38}** Although the majority represents that it is embarking on a plain-meaning analysis, majority opinion at ¶ 11, 15, and that wrongful-death actions are "expressly included" in the definition of "medical claim" in R.C. 2305.113(E)(3), majority opinion at ¶ 13, neither of those representations are borne out in its analysis. The plain language of R.C. Chapter 2125 makes no mention of medical malpractice or R.C. 2305.113, and the plain language of R.C. 2305.113 makes no mention of wrongful death or R.C. Chapter 2125. The majority thus reaches its conclusion through inferential leaps. However, when considering the current and historical context of these two statutory schemes, our previous decisions construing the same language, and properly applied canons of statutory interpretation, all signs point directly against the inference that the majority draws. Because the majority

overcomes this problem by glossing over a sizeable amount of linguistic and historical context, I find it necessary to provide the context that is missing in order to properly rebut the majority's analysis.

## II. History of the Laws of Wrongful-Death and Medical-Negligence Actions

### *A. Origins in Ohio Law*

{¶ 39} Patients injured by medical malpractice have long been able to pursue a negligence cause of action under the common law. *See Slater v. Baker*, 95 Eng.Rep. 860, 862-863 (1767) (holding that actions for medical malpractice sounded in trespass on the case (negligence) rather than trespass vi et armis (battery)); *Craig v. Chambers*, 17 Ohio St. 253, 260 (1867), *abrogated in part on other grounds by Kuhn v. Banker*, 133 Ohio St. 304, 314-315, 13 N.E.2d 242 (1938). On the other hand, a party injured by the death of his or her parent, spouse, or child as a result of a third party's wrongful act had no right of action against the tortfeasor under the common law and no right of action in Ohio until the General Assembly enacted the wrongful-death statutory scheme in 1851. *See Baltimore & Ohio RR. Co. v. Chambers*, 73 Ohio St. 16, 24, 76 N.E. 91 (1905) (describing Ohio's 1851 adoption of "Lord Campbell's Act," *see* 49 Ohio Laws 117).

{¶ 40} The original wrongful-death statutory scheme is strikingly similar to the current scheme. The 1851 enactment provided that a wrongful-death claim needed to be brought by a representative of the decedent no later than two years after the decedent's death for the "exclusive benefit of the [decedent's] widow and next of kin" for a death "caused by wrongful act, neglect or default," which otherwise would have entitled the decedent to a personal cause of action for damages. *Compare* 49 Ohio Laws 117 *with* R.C. 2125.01 and 2125.02.

{¶ 41} Most of the substantive law governing medical malpractice is also essentially the same now as it was in the 1800s: the elements to establish medical malpractice are governed by the common law rather than statute. *Geiselman v. Scott*, 25 Ohio St. 86, 88 (1874) (discussing the common-law elements of

negligence in a medical-malpractice action); *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 23 (discussing the common-law elements of negligence in a medical-malpractice action). Medical-malpractice actions were not identified in any statute of limitations until 1894, when the General Assembly added "malpractice" to the list of common-law actions subject to a one-year statute of limitations. H.B. No. 313, 91 Ohio Laws 299; *see also Shuman v. Drayton*, 8 Ohio C.D. 12, 13, 14 Ohio C.C. 328 (Cir.Ct.1897) (describing the transition of "malpractice" in Ohio law from an unenumerated tort subject to a catchall four-year statute of limitations to an enumerated tort subject to a one-year statute of limitations). From 1894 until now, the law governing limitations on medical-malpractice actions has changed dramatically in relation to limitations on general negligence actions, but it has not changed dramatically in relation to the law governing wrongful-death actions.

### B. Expansion of Medical Malpractice to Encompass Other Causes of Action

{¶ 42} Bit by bit, the General Assembly has added to the statute governing the limitations periods that apply to medical-malpractice actions, making those limitations applicable to additional causes of action and types of defendants not contemplated in the original common-law understanding of medical malpractice. Each step in the evolution of the statute has been cumulative, leading to what is now a rather lengthy and complex statute. As explained below, though, such complexity has not untethered R.C. 2305.113 from its foundation in common-law medical-malpractice actions.

#### 1. The 1800s through 1975: a simple one-year statute of limitations for malpractice

{¶ 43} Up through the middle of the twentieth century, Ohio law provided that "[a]n action for libel, slander, assault, battery, malicious prosecution, false imprisonment or malpractice * * * shall be brought within one year after the cause thereof accrued." *See* Am.Sub.S.B. No. 256, 120 Ohio Laws 646; H.B. No. 319,

122 Ohio Laws 374. Our jurisprudence during this period demonstrates that the common law continued to control the who, what, where, and why of the malpractice cause of action itself because the statute did not provide any new rules on those fronts.

{¶ 44} This court determined that the one-year statutory limitations period on medical-malpractice actions was subject to equitable tolling under the common law, first holding that the cause of action for certain latent injuries did not accrue until the termination of the doctor-patient relationship, *Gillette v. Tucker*, 67 Ohio St. 106, 65 N.E. 865 (1902), paragraph three of the syllabus, *overruled by Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111, 449 N.E.2d 438 (1983), and later holding that the cause of action did not accrue until the patient discovered or reasonably should have discovered the injury resulting from malpractice, *Melnyk v. Cleveland Clinic*, 32 Ohio St.2d 198, 290 N.E.2d 916 (1972), syllabus. We held that the common-law understanding of medical malpractice did not include a spouse's claims for damages for payment of medical expenses or for loss of consortium and services of the injured spouse and that the spouse's cause of action was therefore subject to the catchall four-year statute of limitations for unenumerated causes of action set forth in former R.C. 2305.09(D), *see* G.C. 11224, H.B. No. 334, 112 Ohio Laws 237, recodified in Am.H.B. No. 1, 125 Ohio Laws 7. *Corpman v. Boyer*, 171 Ohio St. 233, 169 N.E.2d 14 (1960), paragraphs one and two of the syllabus. We also held that the common-law understanding of medical malpractice did not include a claim for personal injury caused by a nurse or other nonphysician and that the cause of action for such injuries was therefore "ordinary negligence" subject to the two-year statute of limitations for bodily injury under R.C. 2305.10. *Richardson v. Doe*, 176 Ohio St. 370, 199 N.E.2d 878 (1964), syllabus. In *Richardson*, we explained that if the General Assembly had wanted to expand the malpractice statute of limitations set forth in former R.C. 2305.11 (now in R.C. 2305.113) to "protect groups other than those traditionally associated with

malpractice [i.e., physicians and lawyers], it should have listed the ones to be covered." *Id*. at 373.

*2. 1975: addition of statute of repose and broad definition of "medical claim" to medical-malpractice actions*

**{¶ 45}** The first major legislative shift away from the common law that both expanded the meaning of "malpractice" and constricted the limitations period for filing medical-malpractice actions occurred in 1975. The General Assembly added that the one-year statute of limitations applied to "malpractice, including an action for malpractice against a physician or a hospital." Former R.C. 2305.11(A), Am.Sub.H.B. No. 682, 136 Ohio Laws, Part II, 2809, 2810 ("H.B. 682"). The General Assembly also added a four-year statute of repose, applicable only to "any medical claim against a physician or a hospital" and not to other causes of action enumerated in former R.C. 2305.11(A). Former R.C. 2305.11(B), H.B. 682 at 2810. Finally, the General Assembly added definitions for the terms "hospital" and "physician," *see* former R.C. 2305.11(D)(1) and (2), and, most importantly here, a definition of "medical claim" as "any claim asserted in any civil action against a physician or hospital arising out of the diagnosis, care, or treatment of any person," former R.C. 2305.11(D)(3), H.B. 682 at 2811. It bears emphasizing that this same language from former R.C. 2305.11(D)—applicable to both the statute of repose and statute of limitations on medical-malpractice claims—is virtually identical to the language in R.C. 2305.113(E)(3) that the majority is using to justify its decision today. *See* majority opinion at ¶ 14 (holding that the medical-malpractice statute of repose applies to a wrongful-death action involving medical care due to R.C. 2305.113(E)(3)'s definition of "medical claim," which is "any claim that is asserted in any civil action against a physician * * * that arises out of the medical diagnosis, care, or treatment of any person").

**{¶ 46}** Despite the General Assembly's addition of the statute of repose and broad definition of "medical claim" to former R.C. 2305.11 in H.B. 682, this court

held that the statute as a whole was *still* inapplicable to a husband's cause of action for loss of consortium and other claims related to his wife's being injured by medical malpractice and that his cause of action was still subject to R.C. 2305.09(D)'s catchall four-year statute of limitations for unenumerated causes of action. *Amer v. Akron City Hosp.*, 47 Ohio St.2d 85, 91, 351 N.E.2d 479 (1976). Because the General Assembly did not explicitly expand the statute of limitations or statute of repose in former R.C. 2305.11 to causes of action other than medical malpractice, and because the General Assembly did not provide explicit statutory exceptions elsewhere in the Revised Code, we were precluded from applying R.C. 2305.11 to additional causes of action through inference. *Id.*

{¶ 47} Additionally, because the 1975 amendments to former R.C. 2305.11 still did not identify any person other than a physician, the statute did not apply to causes of action for negligence at the hands of other medical professionals. *See Whitt v. Columbus Coop. Ents.*, 64 Ohio St.2d 355, 358, 415 N.E.2d 985 (1980) ("If the General Assembly had wished to protect groups which are not traditionally associated with malpractice, such as optometrists and dentists, it would have listed them"); *Lombard v. Good Samaritan Med. Ctr.*, 69 Ohio St.2d 471, 433 N.E.2d 162 (1982), syllabus (one-year statute of limitations in former R.C. 2305.11 was inapplicable to negligence committed by hospital employees such as nurses and laboratory technicians).

*3. 1975-2002: specialized rules governing medical-malpractice and related actions take over the previously short, general one-year statute of limitations*

{¶ 48} In the years following the amendments to former R.C. 2305.11 in H.B. 682, the General Assembly expanded the reach of the statute to include various "groups other than those traditionally associated with malpractice," *Richardson*, 176 Ohio St. at 373, 199 N.E.2d 878. At first, it made a few piecemeal additions to former R.C. 2305.11. *See* Am.H.B. No. 1426, 136 Ohio Laws, Part II, 3840, 3841-3842 (adding "podiatrist" to former R.C. 2305.11); Am.Sub.H.B. No.

243, 139 Ohio Laws, Part I, 2153, 2153-2154 (adding "dentist" and "dental claim" to former R.C. 2305.11). In 1987, the General Assembly completely reorganized R.C. 2305.11, essentially dividing it in two, with one expansive section governing medical-malpractice-related actions, and one very small section governing everything else. Am.Sub.H.B. No. 327, 142 Ohio Laws, Part II, 3322, 3322-3325 ("H.B. 327").

{¶ 49} The lion's share of the amended statute provided a new laundry list of rules—encompassing over 20 paragraphs of text—that applied to actions for malpractice, including "an action upon a medical, dental, optometric, or chiropractic claim." Former R.C. 2305.11(B) through (D), H.B. 327 at 3322-3325. Among other things, the General Assembly enlarged the definition of "medical claim" to include

> any claim that is asserted in any civil action against a physician, podiatrist, or hospital, against any employee or agent of a physician, podiatrist, or hospital, or against a registered nurse or physical therapist, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person.

Former R.C. 2305.11(D)(3), H.B. 327 at 3324. The initial portion of the statute—contained in one brief paragraph—maintained that the general one-year statute of limitations applied to the enumerated causes of action, which included "[a]n action for libel, slander, malicious prosecution, or false imprisonment" or "an action for malpractice *other than* an action upon a medical, dental, optometric, or chiropractic claim." (Emphasis added.) Former R.C. 2305.11(A), H.B. 327 at 3322.

**{¶ 50}** Though H.B. 327 was yet another broad expansion of the limitations on medical-malpractice actions, this court still did not allow former R.C. 2305.11 to extend beyond its plain language. For instance, we held that former R.C. 2305.11 was inapplicable to an action for bodily injury arising out of a hospital's negligent credentialing of a physician. *Browning v. Burt*, 66 Ohio St.3d 544, 558, 613 N.E.2d 993 (1993). We also held that former R.C. 2305.11 did not apply to claims against social workers, psychologists, or mental-healthcare facilities. *Thompson v. Community Mental Health Ctrs. Of Warren Cty., Inc.*, 71 Ohio St.3d 194, 642 N.E.2d 1102 (1994), syllabus.

**{¶ 51}** In *Thompson*, we specifically rejected the argument—now adopted by the majority, *see* majority opinion at ¶ 26—that the change in the reference to "malpractice" in former R.C. 2305.11(A) from "malpractice, *including* an action for malpractice against a physician" to "malpractice *other than* an action upon a medical * * * claim" (emphasis added), H.B. 327 at 3322, meant that the limitations periods in former R.C. 2305.11(B) through (D), as amended by H.B. 327, reached beyond common-law medical-malpractice claims and now applied to any causes of action involving a medical factual context. *Thompson* at 195-196. Whether medical claims were described as being included in or excluded from the general limitation periods in R.C. 2305.11(A), medical claims were still identified as arising only from within the category of malpractice, the definition of which was still controlled by common law unless the statute explicitly provided otherwise. *Thompson* at 196.

*4. 2002 onward: the laundry list of rules related to medical malpractice in R.C. 2305.11 is moved to its own statute, R.C. 2305.113*

**{¶ 52}** Following additional amendments in 2002, R.C. 2305.11 remained a very lopsided statute, with a small portion governing the general one-year statute of limitations for various torts, including "malpractice," and the remainder governing the limitations periods for the subset of malpractice that included

"medical claims."  Former R.C. 2305.11(A) and (B)(1), Am.Sub.H.B. No. 412, 149 Ohio Laws, Part V, 8352 ("H.B. 412").[1]  The General Assembly again expanded the definition of a "medical claim" to include claims against a "home, or residential facility."  Former R.C. 2305.11(D)(3), H.B. 412 at 8354.  The General Assembly also expanded the types of claims that should be considered medical claims, for the first time adding a statutory cause of action to the list:

> "Medical claim" includes the following:
>
> (a) Derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person;
>
> (b) Claims that arise out of the medical diagnosis, care, or treatment of any person and to which either of the following apply:
>
> (i) The claim results from acts or omissions in providing medical care;
>
> (ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.
>
> (c) Claims that arise out of the medical diagnosis, care, or treatment of any person and that are brought under section 3721.17 of the Revised Code.

Former R.C. 2305.11(D)(3)(a) through (c), H.B. 412 at 8354.

{¶ 53} Later in 2002, the General Assembly finally separated the provisions governing malpractice on medical claims from the general one-year statute of

---

1. The General Assembly made other substantial changes to R.C. 2305.11 in 1996.  Am.Sub.H.B. No. 350, 146 Ohio Laws, Part II, 3867, 3912-3915.  However, the amendments were later found to be unconstitutional in their entirety by *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 715 N.E.2d 1062 (1999), paragraphs two and three of the syllabus, so they are omitted from this opinion's analysis.

limitations. Am.Sub.S.B. No. 281, 149 Ohio Laws, Part II, 3791 ("S.B. 281"). The language previously contained in R.C. 2305.11(B) through (D) was moved to the newly enacted R.C. 2305.113. S.B. 281 at 3799-3804. The general one-year statute of limitations continued to indicate that a medical claim was a subset of malpractice. *See* former R.C. 2305.11(A), S.B. 281 at 3796 (referring to "an action for malpractice other than an action upon a medical * * * claim"). The new R.C. 2305.113(A) included a one-year statute of limitations on medical-malpractice actions "[e]xcept as otherwise provided in this section," and the new R.C. 2305.113(C) designated the four-year statute of repose as one of those exceptions. S.B. 281 at 3799-3800.

{¶ 54} The relevant language of R.C. 2305.113 has remained largely the same since 2002, apart from a few additions to the list of actions that constitute a "medical claim." *See, e.g.*, 2014 Sub.H.B. No. 290 (adding "claims that arise out of skilled nursing care or personal care services provided in a home pursuant to a plan of care, medical diagnosis, or treatment" to R.C. 2305.113(E)(3)(d));[2] 2018 Am.Sub.H.B. No. 7 (adding "[d]erivative claims for relief that arise from the plan of care prepared for a resident of a home" to R.C. 2305.113(E)(3)(b)).

{¶ 55} Presently, R.C. 2305.11(A) continues to provide that "an action upon a medical * * * claim" falls within the category of "malpractice." Further, the separate statute setting out periods of limitations for medical claims continues to provide a one-year statute of limitations for medical claims "[e]xcept as otherwise provided in this section," R.C. 2305.113(A), and the four-year statute of repose continues to be one of those exceptions, R.C. 2305.113(C).

## C. *Limitations on Wrongful-Death Actions*

{¶ 56} The history of the statutory limitations on a wrongful-death cause of action is far less complicated. In 1851, the General Assembly created a cause of

---

2. This language added in 2014 Sub.H.B. No. 290 is now contained in R.C. 2305.113(E)(3)(e).

action for wrongful death that belonged exclusively to the decedent's "widow and next of kin," allowing for the recovery of damages caused by "the pecuniary injury resulting from such death." 49 Ohio Laws 117. Recovery was possible only if the action was "commenced within two years after the death of such deceased person" and the death was "caused by [a] wrongful act, neglect or default" that would have otherwise entitled the decedent to a personal cause of action for damages. *Id.*

{¶ 57} This court has long recognized that an action on a wrongful-death claim is "altogether distinct and apart from the right of action which the injured person might have had and upon the existence of which such new right is conditioned." *Karr v. Sixt*, 146 Ohio St. 527, 531, 67 N.E.2d 331 (1946). A wrongful-death claim does not involve the same parties, the same type of injury, or the same type of damages as a claim on the predicate wrongful act. *Russell v. Sunbury*, 37 Ohio St. 372, 375-376 (1881); *Gibson v. Solomon*, 136 Ohio St. 101, 108, 23 N.E.2d 996 (1939). Accordingly, even when a person injured by a wrongful act is able to file a personal-injury suit prior to death, the decedent's next of kin may file a wrongful-death action to recover for their own independent injuries caused by the loss of that person. *Mahoning Valley Ry. Co. v. Van Alstine*, 77 Ohio St. 395, 416, 83 N.E. 601 (1908).

{¶ 58} In 1931, the General Assembly added that a wrongful-death action must be filed within two years of the decedent's death "[e]xcept as otherwise provided by law." Former G.C. 10509-167, Am.S.B. No. 10, 114 Ohio Laws, 320, 438-439. Wrongful-death-claim defendants pointed to the added phrase—"except as otherwise provided by law"—to argue that the statutes of limitations for actions on predicate wrongful acts (subsequently governed by R.C. Chapter 2305), superseded the two-year limitations period set forth in former G.C. 10509-167 (subsequently recodified in R.C. 2125.02). *See Klema v. St. Elizabeth's Hosp. of Youngstown*, 170 Ohio St. 519, 521-522, 166 N.E.2d 765 (1960) (involving the argument that the one-year statute of limitations for medical malpractice should

prevail over the two-year limitations period for wrongful death). In *Klema*, this court unanimously rejected such reasoning, holding that because the wrongful-death cause of action was created by statute rather than the common law, any statutes not explicitly governing wrongful death were inapplicable:

> The action being a statutory one relating to a specific type of cause, i.e., wrongful death, the phrase, "except as otherwise provided by law," can only relate to other provisions relating to death. And the only other provisions relating to death actions are those contained in the wrongful death statute itself, namely, the provisions relating to actions arising in other states and the saving provision. It is to these that the phrase must necessarily relate.

*Id*. at 524.

{¶ 59} Although the phrase "except as otherwise provided by law" is no longer included in the wrongful-death statutory scheme, Am.Sub.H.B. No. 332, 139 Ohio Laws, Part II, 2458, 2459, our reasoning in *Klema* provides particularly salient insight into the relationship between R.C. Chapter 2125 and other laws contained in the Revised Code and the common law.

{¶ 60} Even after the significant changes in 1975 to the law governing medical-malpractice limitations periods, as described above in Section II(B), this court's decision in *Klema* remained good law. *See Koler v. St. Joseph Hosp.*, 69 Ohio St.2d 477, 479-480, 432 N.E.2d 821 (1982). After the 1975 overhaul of former R.C. 2305.11 in H.B. 682, wrongful-death-claim defendants pointed to the broad nature of the new definition of "medical claim" and the new four-year statute of repose to argue that the statutory limitations on medical-malpractice actions superseded the two-year statute of limitations for wrongful-death actions found in R.C. 2125.02. *Koler* at 480-481. This court again rejected the attempt to extend

30

the reach of former R.C. 2305.11(A) (what is now R.C. 2305.113(A)) by inference. In addition to reinforcing the holding in *Klema* that wrongful-death actions are unique and controlled only by the express language in R.C. Chapter 2125, this court held that the significant changes to R.C. 2305.11(B) through (D) did not change the fact that actions under those provisions were still a subset of "malpractice" under R.C. 2305.11(A). *Koler* at 481.

{¶ 61} The only other big change to the wrongful-death statutory scheme that is relevant to this analysis[3] was enacted in 2004 as part of a broad tort-reform bill in Am.Sub.S.B. 80, 150 Ohio Laws, Part V, 7915 ("S.B. 80"). In S.B. 80, the General Assembly added a ten-year statute of repose for wrongful-death claims related to product-liability claims, R.C. 2125.02(D), as well as a ten-year statute of repose for personal-injury claims related to product liability, R.C. 2305.10(C)(1). S.B. 80 at 7926, 7932. The General Assembly also expressly included wrongful-death claims in a ten-year statute of repose for defective-construction claims in R.C. 2305.131. S.B. 80 at 7937-7938. Although the General Assembly also made changes to R.C. 2305.113 in S.B. 80, it did not add "wrongful death" to the definition of "medical claim" in R.C. 2305.113(E)(3) or to any other provision within R.C. 2305.113. *See* S.B. 80 at 7933-7937.

### *D. Summary*

{¶ 62} From the foregoing history of our laws governing wrongful-death actions and the limitations periods for medical-malpractice actions, it is clear that the two types of actions have always been and continue to be governed by separate sets of rules. The substance of medical-malpractice actions has been and continues

---

3. As with the statutory scheme in R.C. Chapter 2305 governing limitations periods for common-law actions in that chapter, the General Assembly also attempted to make changes to R.C. Chapter 2125 in 1996. Am.Sub.H.B. No. 350, 146 Ohio Laws, Part II, 3867, 3900-3906. Those amendments, however, were later found to be unconstitutional in their entirety by *Ohio Academy of Trial Lawyers*, 86 Ohio St.3d 451, 715 N.E.2d 1062, at paragraphs two and three of the syllabus, and so they are omitted from this discussion.

to be governed by the common law unless otherwise provided by statute. Wrongful-death actions continue to be creatures of statute. Medical malpractice was identified as a subset of malpractice when it initially appeared in our state's statutory limitations on actions, and it is *still* identified as a subset of malpractice in R.C. 2305.11, albeit a subset with limitations periods that are provided separately in R.C. 2305.113. The General Assembly has made a variety of additions and exceptions to these actions in its repeated amendments to both R.C. 2125.02 and R.C. 2305.113, but none of those amendments has changed the relationship between the two statutes, or rather, the lack of a relationship. The General Assembly was put on notice in *Klema* that exceptions to the wrongful-death statutory scheme would need to be explicit in order to be effective, and the General Assembly subsequently made explicit exceptions related to products liability and defective construction but *not* medical malpractice.

### III. Inapposite and Controlling Precedent

#### A. *Inapposite:* Antoon *and* Wilson

{¶ 63} You may notice that the foregoing historical review of the independence and non-interrelationship between R.C. Chapters 2305 and 2125 did not mention the cases *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974 and *Wilson v. Durrani*, 164 Ohio St.3d 419, 2020-Ohio-6827, 173 N.E.3d 448. That is because those cases—despite the majority's marked reliance on them, *see* majority opinion at ¶ 12-14—are irrelevant to the question whether any of the rules in R.C. 2305.113 apply to wrongful-death actions under R.C. Chapter 2125.

{¶ 64} The question in *Antoon* was whether the medical-malpractice statute of repose, R.C. 2305.113(C), was constitutional in the context of a medical-malpractice action that was timely when initially filed but, following a voluntary dismissal of the initial complaint, was refiled after the four-year statute of repose. *Antoon* at ¶ 1, 27-29, 34. Because the underlying action was for medical

malpractice, there was no dispute whether R.C. 2305.113 was applicable, and nothing in *Antoon* addressed wrongful-death actions.

**{¶ 65}** The question in *Wilson* was whether a medical-malpractice action, which was otherwise filed in compliance with the medical-malpractice statute of limitations, R.C. 2305.113(A), and refiled in compliance with the applicable savings statute, R.C. 2305.19(A), could nonetheless be barred by the medical-malpractice statute of repose, R.C. 2305.113(C). *Wilson* at ¶ 1-4. No one disputed that R.C. 2305.113 was applicable to medical-malpractice actions, no wrongful-death action was involved, and the only dispute was regarding the interplay among applicable statutes.

**{¶ 66}** In both *Antoon* and *Wilson*, this court described R.C. 2305.113(C) as being a "true" statute of repose when explaining why other rules within the *same* statutory scheme could not be used to save medical-malpractice actions from the absolute four-year accrual limit in R.C. 2305.113(C). *Antoon*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, at ¶ 22, 35; *Wilson*, 164 Ohio St.3d 419, 2020-Ohio-6827, 173 N.E.3d 448, at ¶ 16, 38; *see also Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, ¶ 18. Some of this emphasis on being a "true" statute of repose stems from the fact that we previously referred to all statutory periods of limitation, including statutes of repose, as "statutes of limitation."[4] *See, e.g.*, *Baird v. Loeffler*, 69 Ohio St.2d 533, 535, 433 N.E.2d 194

---

4. Although we now use separate terms for the two concepts, it remains true that a statute of repose imposes a certain kind of "limitation" on a cause of action and that the time limit provided in a statute of repose is a " 'period of limitation.' " *Wilson*, 164 Ohio St.3d 419, 2020-Ohio-6827, 173 N.E.3d 448, at ¶ 35, quoting 735 Ill.Stat.Ann. 5/13-217; *see also Elliot v. Durrani*, 171 Ohio St.3d 213, 2022-Ohio-4190, 216 N.E.3d 641, ¶ 21 ("this court in *Wilson* quoted with approval the meaning of the phrase 'period of limitation' as interpreted by the Seventh Circuit Court of Appeals in *Hinkle v. Henderson*, 85 F.3d 298 (7th Cir.1996); that court applied the phrase to both a statute of repose and a statute of limitations"), citing *Wilson* at ¶ 35. The majority ignores this logic and contravenes our precedent when it claims that statutes of repose are not included in the following language found in R.C. 2305.03(A): "unless a different limitation is prescribed by statute, a civil action may be commenced only within the period prescribed in sections 2305.04 to 2305.22 of the Revised Code."

(1982) (referring to the four-year limitations period in what is now R.C. 2305.113(C) as a "statute of limitation"); *Mominee v. Scherbarth*, 28 Ohio St.3d 270, 273, 503 N.E.2d 717 (1986) (same); *Hardy v. VerMeulen*, 32 Ohio St.3d 45, 45-46, 512 N.E.2d 626 (1987), fn. 2 (noting for the first time that the four-year limitations period in what is now R.C. 2305.113(C) is "not a traditional statute of limitations" and is akin to statutes that "have sometimes been described as statutes of repose"), *overruled on other grounds by Ruther*. We later emphasized that a statute of repose is " '[u]nlike a true statute of limitations,' " because the former can bar the possibility of litigation before the cause of action accrues and the latter applies only after the cause of action has accrued. *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 112, quoting *Sedar v. Knowlton Constr. Co.*, 49 Ohio St.3d 193, 195, 551 N.E.2d 938 (1990).

{¶ 67} In *Ruther*, we explained that a statutory limitations period is a "true statute of repose" when it "does not bar a vested cause of action, but prevents a cause of action from vesting." *Id*. at ¶ 18. We held that there is no vested right to prosecute common-law causes of action and that abolishing, redefining, or placing time limits on the accrual of a common-law cause of action is within the purview of the General Assembly. *Id*. at ¶ 13-14. We concluded that the General Assembly's decision to limit medical-malpractice causes of action to injuries discovered within four years of the negligent act or omission was a valid exercise of the legislature's powers and not a violation of the right-to-remedy provision of Article I, Section 16 of the Ohio Constitution. *Ruther* at ¶ 24, 35. Thus, the references to a "true" statute of repose in *Ruther*, *Antoon*, and *Wilson* relate to the statute's effect on the identified cause of action. They have nothing to do with

Majority opinion at ¶ 28. The majority's willingness to risk the unintended consequences of its statement seems particularly unwise given that the only reward is the rebuttal of a rather minor point in the Tenth District's analysis, *see* 2022-Ohio-629, 186 N.E.3d 232, ¶ 28-29.

expanding statutes of repose to apply to anything other than the identified causes of action.

{¶ 68} In the present appeal, there is no dispute regarding a medical-malpractice cause of action, and there is no attempt to construe R.C. 2305.113(C) as something other than a statute of repose. The only dispute is whether R.C. 2305.113 applies *at all* to the statutory cause of action for wrongful death. The fact that R.C. 2305.113(C) is a "true statute of repose" that prevents the accrual of causes of action identified in the statute is irrelevant to the question whether it applies to any causes of action that are *not* identified in the statute (e.g., wrongful-death claims). Accordingly, the majority's reliance on *Antoon* and *Wilson* is misplaced, and its claim to be merely applying the holdings from *Antoon* and *Wilson* to this case is misleading.

### B. Controlling: **Klema** and **Koler**

{¶ 69} Just as the majority is wrong that *Antoon*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, and *Wilson*, 164 Ohio St.3d 419, 2020-Ohio-6827, 173 N.E.3d 448, are relevant to this dispute, it is wrong in denying the relevance of *Klema*, 170 Ohio St. 519, 166 N.E.2d 765, and *Koler*, 69 Ohio St.2d 477, 432 N.E.2d 821. The majority declares *Klema* and *Koler* to be inapplicable for two reasons: (1) the versions of R.C. 2305.11 in effect when those decisions were rendered applied to "malpractice claims" but now R.C. 2305.113 applies to "medical claims" rather than "malpractice," majority opinion at ¶ 24-25; and (2) *Klema* and *Koler* held only that a wrongful-death claim is not "malpractice," and neither case addressed whether a wrongful-death claim could be a "medical claim." These points are inaccurate and otherwise involve distinctions without a difference.

{¶ 70} As explained above when discussing the history of Ohio's statutory limitations periods for common-law medical-malpractice claims, although the time limits set forth in R.C. 2305.113 for filing a "medical claim" are provided separately from the time limits set forth in R.C. 2305.11 for filing other malpractice

claims, the *cause of action* for a "medical claim" is still a subset of a malpractice cause of action, R.C. 2305.11(A). The majority appears to lose sight of the fact that statutes like R.C. 2305.11 and 2305.113 do not create or govern the substance of any causes of action; they merely provide time limitations on the accrual and litigation of causes of action that already exist under the common law or other statutes. *See Hardy*, 32 Ohio St.3d at 46, 512 N.E.2d 626 (explaining that expanding the limitations periods in what is now R.C. 2305.113(C) "[did] not change the substantive character of a malpractice action"), *overruled on other grounds by Ruther*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291. The limitations periods set out in R.C. 2305.113 do not create a new cause of action called "medical claims"; rather, they apply to medical-malpractice actions, and the definition of "medical claim" in R.C. 2305.113(E)(3) brings various categories of personal-injury and derivative actions within the scope of medical malpractice solely for the purpose of applying limitations periods to those actions.

{¶ 71} The General Assembly is free to add to the categories identified in R.C. 2305.113(E)(3), to include relevant wrongful-death claims, or to otherwise create an express exception to the rules in R.C. Chapter 2125. But we made it clear in *Klema* that the General Assembly must do so expressly, and we made it clear in *Koler* that the legislature cannot do so by using expansive but generic language. *Klema* at 524; *Koler* at 480-481. The General Assembly's amendments moving the limitations periods for medical-malpractice actions from R.C. 2305.11(B) through (D) to R.C. 2305.113, *see* S.B. 281 at 3799-3804, did not erase its obligation to be explicit when expanding the reach of rules that otherwise would apply only to common-law medical-malpractice causes of action.

{¶ 72} Contrary to the majority's assertion that "this court did not address whether wrongful-death claims are 'medical claims' " in *Koler*, majority opinion at ¶ 22, the court did indeed address that question in its opinion. We held that no matter what kind of effect the broadly worded definition of "medical claim" might

have on the reach of the medical-malpractice limitations statute in former R.C. 2305.11 (now R.C. 2305.113), it did not change the meaning of "malpractice" in former R.C. 2305.11(A) (still R.C. 2305.11(A)) and therefore, the one-year statute of limitations set forth in R.C. 2305.11(A) could not be interpreted to apply to wrongful-death claims unless explicitly stated. *Koler* at 481. Apart from the changes in statutory numbering, the same continues to be true today. Accordingly, the majority's efforts to distinguish and discredit our decisions in *Klema* and *Koler* are misinformed and therefore do not justify the conclusions that it has reached.

## IV. Statutory Interpretation

{¶ 73} Returning to the majority's main analysis, the only affirmative support that the majority provides for its conclusion that wrongful-death actions are "clearly and expressly included" in the plain language of R.C. 2305.113, majority opinion at ¶ 13, is the fact that the term "medical claim" in R.C. 2305.113(E)(3) is defined as "claims that are 'asserted in any civil action against a physician * * * that arise[] out of the medical diagnosis, care, or treatment' of a patient" (ellipsis and brackets sic), majority opinion at ¶ 13, quoting R.C. 2305.113(E)(3). To be sure, this definition uses some terms that can be construed very broadly, but " 'a statute's meaning does not always turn solely on the broadest imaginable definitions of its component words,' " *Dubin v. United States*, 599 U.S. 110, 120, 143 S.Ct. 1557, 216 L.Ed.2d 136 (2023), quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. __, __, 138 S.Ct. 1612, 1631, 200 L.Ed.2d 889 (2018). "[T]he meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991).

{¶ 74} As thoroughly explained above in Section II(B), the provisions of R.C. 2305.113 are set forth in the context of limitations periods for common-law medical-malpractice actions. To the extent that the General Assembly intends for R.C. 2305.113 to apply beyond the common-law understanding of medical malpractice or to statutory causes of action, the legislature must make that intent

clear through express language rather than implication. *See Shrader v. Equitable Life Assur. Soc. of the United States*, 20 Ohio St.3d 41, 44, 485 N.E.2d 1031 (1985) ("a statute should not be construed to impair pre-existing law in the absence of an explicit legislative statement to the contrary"); *Vaccariello v. Smith & Nephew Richards, Inc.*, 94 Ohio St.3d 380, 384, 763 N.E.2d 160 (2002) ("codification [of a legal doctrine] does not thereby abrogate the common law"). We have repeatedly held that if the General Assembly wants to expand R.C. 2305.113 (or former R.C. 2305.11) to apply to actors or actions beyond common-law medical malpractice, it must list the actors or actions to be covered. *Klema*, 170 Ohio St. at 521-524, 166 N.E.2d 765; *Richardson*, 176 Ohio St. at 373, 199 N.E.2d 878; *Hocking Conservancy Dist. v. Dodson-Lindblom Assocs., Inc.*, 62 Ohio St.2d 195, 197-198, 404 N.E.2d 164 (1980); *Koler*, 69 Ohio St.2d at 481, 432 N.E.2d 821; *Thompson*, 71 Ohio St.3d at 195-196, 642 N.E.2d 1102.

**{¶ 75}** In the list of actions considered to be medical claims, R.C. 2305.113(E)(3), the only item that involves a statutorily derived cause of action is R.C. 2305.113(E)(3)(d), which applies to "[c]laims that arise out of the plan of care, medical diagnosis, or treatment of any person and that are brought under section 3721.17 of the Revised Code."[5] Accordingly, the plain meaning of "any civil action" in R.C. 2305.113(E)(3) does not include unenumerated statutory causes of action such as wrongful death.

**{¶ 76}** The remainder of the majority opinion criticizes points made by the Tenth District Court of Appeals, appellee, and the second dissenting opinion, but without its faulty premise that the plain language of R.C. 2305.113 includes

---

5. The right of action in R.C. 3721.17(G)(1) belongs to nursing-home residents for violations of the Ohio Nursing Home Patients' Bill of Rights found in R.C. 3721.10 through 3721.17. *See Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 9-11.

wrongful-death actions, much of the majority's analysis does not hold up. For example, in rejecting the argument that R.C. 2305.113 is inapplicable to wrongful-death actions because the plain language of the statute of repose in R.C. 2125.02(F) does not include medical malpractice, the majority purports to apply a mishmash of canons of construction, including the related-statutes canon and harmonious-reading canon. Majority opinion at ¶ 19-20. However, the "related" statutory language with which R.C. Chapter 2125 must supposedly be harmonized is the language in R.C. 2305.113 that the majority claims "clearly applies to wrongful-death claims," majority opinion at ¶ 19. The majority criticizes the Tenth District for noting that wrongful death is not contemplated in the definition of "derivative claims for relief" under R.C. 2305.113(E)(7), majority opinion at ¶ 26-28, citing 2022-Ohio-629, 186 N.E.3d 232, ¶ 25-26, but the majority only counters that the main definition of "medical claim" in R.C. 2305.113(E)(3) "clearly includes wrongful-death claims," majority opinion at ¶ 27. The majority also criticizes the Tenth District for noting that R.C. 2305.03(A) provides an exception to any "period prescribed" in R.C. 2305.04 through 2305.22 when "a different limitation is prescribed by statute," majority opinion at ¶ 28, citing 2022-Ohio-629 at ¶ 28, but apart from the baffling argument that a period of repose is not a "period prescribed," majority opinion at ¶ 28, which I refuted above in footnote 4, the majority concludes that R.C. 2305.03(A) is irrelevant because wrongful-death claims "are expressly included in the broad statutory definition of 'medical claim,' " majority opinion at ¶ 28.

{¶ 77} The majority commits different errors in criticizing the Tenth District's conclusion that based on the interpretive canon expressio unius est exclusio alterius (otherwise known as negative implication), there is no wrongful-death statute of repose for the wrongful act of medical malpractice. The majority holds that the canon cannot apply here, because there is only one, rather than multiple, wrongful-death statute of repose. *Id.* at ¶ 20. The majority's reasoning is

flawed for two reasons. First, the majority ignores the fact that there is more than one wrongful-death statute of repose.[6] As explained above in Section II(C), there is a ten-year statute of repose in R.C. 2125.02(F)(2) for a wrongful-death cause of action "involving a product liability claim." And there is also a ten-year statute of repose in R.C. 2305.131(A) for any wrongful-death action "that arises out of a defective and unsafe condition of an improvement to real property." Second, the majority's requirement of multiple statutes of repose within a "series of terms," majority opinion at ¶ 20, is an improper narrowing of the canon's applicability. Even if R.C. 2125.02(F)(2) were the sole wrongful-death statute of repose, the negative-implication canon would still apply.

{¶ 78} The essential characteristic we are supposed to look for when determining whether a statute carries a negative implication is the exclusivity of a term in relation to a particular class, i.e., an " ' "associated group or series." ' " *Natl. Labor Relations Bd. v. SW Gen., Inc.*, 580 U.S. 288, 302, 137 S.Ct. 929, 197 L.Ed.2d 263 (2017), quoting, *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 80, 122 S.Ct. 2045, 153 L.Ed.2d 82 (2002), quoting *United States v. Vonn*, 535 U.S. 55, 65, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002). The reference to a "series" relates to the existence of a group or class to which the item or exception belongs rather than the nature of the item or exception itself. *See Vonn* at 65 ("expressing one item of a commonly associated group or series excludes another left unmentioned").

{¶ 79} Ohio's wrongful-death statutory scheme might not identify a class using a series of terms, but it *does* identify a class through a series of criteria. The statutory scheme applies to a class comprised of acts that (1) are wrongful, (2)

---

6. By the end of its analysis, the majority also reaches the perplexing conclusion that "[t]here is no separate statute of repose for wrongful-death claims," majority opinion at ¶ __. To the contrary, there *are* statutes of repose for wrongful-death claims, they just don't apply to wrongful acts related to medical malpractice.

resulted in the decedent's death, and (3) would theoretically have been actionable by the decedent if he or she had survived.[7] R.C. 2125.01. A variety of acts fall within this statutorily defined class, including purposeful and negligent acts, as well as acts that carry strict liability. *See, e.g.*, *Collins v. Sotka*, 81 Ohio St.3d 506, 692 N.E.2d 581 (1998), paragraph two of the syllabus (wrongful-death case involving murder); *Wise v. Timmons*, 64 Ohio St.3d 113, 592 N.E.2d 840 (1992) (wrongful-death case involving automobile accident); *Lisk v. Hora*, 109 Ohio St. 519, 523, 143 N.E. 545 (1924) (wrongful-death case involving a dog bite); *Koler*, 69 Ohio St.2d at 479-480, 432 N.E.2d 821 (wrongful-death case involving medical malpractice); *Fortman v. Dayton Power & Light Co.*, 80 Ohio App.3d 525, 526-528, 609 N.E.2d 1296 (2d Dist.1992) (wrongful-death case involving negligent construction); *Shover v. Cordis Corp.*, 61 Ohio St.3d 213, 215, 574 N.E.2d 457 (1991) (wrongful-death case involving products liability), *overruled by Collins* at 511. Of all items in this class of legally actionable wrongful acts, only two are subject to a statute of repose: wrongful acts involving defective construction and wrongful acts involving products liability.

**{¶ 80}** Thus, we have an " 'associated group or series,' " *Chevron U.S.A.* at 302, quoting *Vonn* at 65, of legally actionable acts or omissions that are covered by the wrongful-death statutory scheme, and we have two acts within that group identified as being subject to a statute of repose in R.C. 2305.131(A) and R.C. 2125.02(F)(2). This supports the negative implication that other wrongful acts within the group—such as those related to medical malpractice—are not subject to a statute of repose.

---

7. The statute applies to acts for which the decedent would have potentially had a cause of action, irrespective of whether the cause of action was or could have been successfully maintained by the decedent. *See May Coal Co. v. Robinette*, 120 Ohio St. 110, 117, 165 N.E. 576 (1929).

**{¶ 81}** Finally, in its unsuccessful attempt to repudiate *Klema* and *Koler*, *see* majority opinion at ¶ 23-25, the majority fails to establish that its analysis does not conflict with the prior-construction canon of interpretation, which presumes that once we interpret the meaning of a statutory provision, the legislature's use of that same language in a new or amended statute is presumed to incorporate that interpretation. *See Seeley v. Expert, Inc.*, 26 Ohio St.2d 61, 72-73, 269 N.E.2d 121 (1971), citing *Doll v. Barr*, 58 Ohio St. 113, 121, 50 N.E. 434 (1898); *Bragdon v. Abbott*, 524 U.S. 624, 645, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). As explained above in Sections II(B), II(C), and III(B), we already considered and soundly rejected the argument that the periods of limitations for medical-malpractice actions necessarily applied to wrongful-death actions based on the definition of "medical claim" as " 'any claim asserted in any civil action against a physician or hospital arising out of the diagnosis, care or treatment of any person.' " *Koler* at 480, quoting former R.C. 2305.11(D)(3), H.B. 682 at 2811. Because the General Assembly decided to keep a virtually identical definition of "medical claim" when it enacted R.C. 2305.113 in 2002, *see* S.B. 281 at 3801-3802, our interpretation of that definition in *Koler* still controls.

### III. Conclusion

**{¶ 82}** After many of our decisions finding that a particular cause of action or a particular kind of medical-care professional falls outside the statute governing limitations on medical-malpractice actions, now found in R.C. 2305.113, the General Assembly has chosen to make additions to the statute to include the previously excluded actor or cause of action. The General Assembly has not made that choice regarding causes of action for wrongful death. If the General Assembly wants the medical-malpractice statute of repose in R.C. 2305.113 to apply to wrongful-death causes of action, the General Assembly is free to add language saying as much.

**{¶ 83}** We have interpreted the General Assembly's additions to R.C. 2305.113(E)(3) to expand the application of the statute as far as the language will allow, but no further. There is no reason at this point for us to relieve the General Assembly of its duty to be explicit when expanding R.C. 2305.113 beyond the common law and to instead infer the addition of statutory wrongful-death actions on the General Assembly's behalf. I respectfully dissent, and I would affirm the judgment of the Tenth District Court of Appeals.

STEWART, J., concurs in the foregoing opinion.

_____

**BRUNNER, J., dissenting.**

## I. INTRODUCTION

**{¶ 84}** In December 2003, the deceased, Todd Everhart ("Everhart"), received medical care from appellants, Coshocton County Memorial Hospital ("Coshocton Hospital") and Drs. Mohamed Hamza and Joseph J. Mendiola, after an auto accident. The care he received included an x-ray of his chest, which revealed an "opacity" in his lung that should have been but was not examined further. That failure permitted Everhart's lung cancer to go undiscovered until August 2006, and the cancer proved to be fatal—Everhart died on October 28, 2006. Everhart's widow and estate administrator, Machelle Everhart, appellee, filed suit on January 25, 2008, within the two-year statute of limitations for a wrongful-death claim. The statute of repose for wrongful-death claims, which applies only in certain products-liability cases, did not affect this claim, which allegedly occurred from professional negligence and malpractice.

**{¶ 85}** The trial court, after approximately 12 years of litigation, permitted appellants to assert the statute of repose as an affirmative defense yet simultaneously prevented appellee from amending her complaint to respond to this belated defense. The trial court thereafter granted judgment on the pleadings to one of the medical-provider appellants on the grounds that the four-year medical-

malpractice statute of repose barred the wrongful-death and consortium claims brought on behalf of the decedent's estate and his surviving widow. The Tenth District Court of Appeals reversed. I would dismiss this case as having been improvidently accepted, and in the absence of that disposition, affirm on the merits. Thus, I respectfully dissent.

{¶ 86} We cannot fairly determine whether the alleged wrongdoing by appellants was within four years of any malpractice because the trial court refused to allow appellee to amend her complaint in response to appellants' belated assertion of the statute of repose. This makes the case not appropriate for review, and dismissing it as improvidently accepted is the better course.

{¶ 87} But to the extent that we consider the merits of the case, I would affirm, because this wrongful-death action was brought within the wrongful-death statute of limitations, and the wrongful-death statute of repose applies only in product-liability and defective-construction cases. The majority focuses on the broad language of the medical-malpractice statute of repose and finds this wrongful-death claim to be subject to the limitation found in that statute. But no amount of word parsing can escape the elemental fact that claims for medical malpractice—those claims that result in injury short of death—are fundamentally different from wrongful-death claims based on alleged medical negligence. Though each type of claim can originate from the same type of negligence, the claims are completely distinct: one is for the wrong to the injured patient and is confined to loss and suffering before death, *see* R.C. 2305.113, while the other is for the wrong to the decedent's beneficiaries and is confined to their loss as a result of the death, *see* R.C. 2125.02. For this reason, we have previously held that they are different claims governed by different limitations periods. And further, not only are the two kinds of claims factually different under the common law, but the legislature has also recognized their differences because they are addressed and governed by completely different chapters of the Revised Code (R.C. Chapters

44

2125 and 2305), wherein each has its own statute of limitations and statute of repose. Wrongful-death claims and medical-malpractice claims can and do have different statutes of limitations and repose. And it is possible that because of their differences, the General Assembly does not want the statute of repose in other types of wrongful-death cases to apply (*see* R.C. 2125.02(F)(2)), because the limitation in that statute does not apply in cases such as Everhart's.

{¶ 88} A wrongful-death action does not accrue until the wrongful act (in this case, medical misdiagnosis) causes death. In cases such as Everhart's, where a statute of repose may run before the stricken patient dies, prohibiting relatives from bringing a wrongful-death suit, as the majority now does, violates the Ohio Constitution's command that "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Article I, Section 16, Ohio Constitution.

{¶ 89} Today, the majority attempts to bootstrap legislation not meant to address medical malpractice resulting in wrongful death to impose what the legislature did not. In our fidelity to the rule of law, we should not transmute a statute to fit a situation for which it was not written. Our fealty must be to the law as written and not to anticipate the legislature in matters of policy. Applying the medical-malpractice statute of repose to claims of wrongful death, especially when there are two distinct statutory schemes for these two claims, results in our assuming the role of the legislature. While some may wish for that result to occur today, there is little basis in law to support it. What this court does today is tantamount to making a legal theory "stick" after having been haphazardly thrown against the wall in Everhart's case.

{¶ 90} I would dismiss this case as improvidently accepted because of the trial court's failure to allow all parties to be fully heard on appellants' defense or,

to the extent that this court addresses the merits, I would affirm. The majority does otherwise, and so I respectfully dissent.

## II. FACTS AND PROCEDURAL HISTORY

{¶ 91} I adopt the majority's statement of facts and case history but find it necessary to make some additional observations about the posture of the case. Specifically, I would note that although appellants all answered and generically raised the statute of "limitations" as a defense,[8] none of their many answers to appellee's three complaints specifically raised the statute of repose. Only after nine years of litigation and having been alerted by new caselaw, *see Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, to what could have been pled as a defense in their initial answer, did appellants finally raise that issue. That is, starting in August 2017, appellants sought leave to amend their answers and to file motions for judgment on the pleadings, asserting that the case should be dismissed as having been filed beyond the medical-claims statute of repose. Before the trial court ruled on those motions, however, the case was stayed due to bankruptcy proceedings involving appellant Coshocton Hospital.

{¶ 92} After the case was reactivated in 2019 and the trial court granted them leave to do so, appellants amended their answers to assert the statute-of-repose defense against appellee's claims and asked for judgment on the pleadings.

{¶ 93} One month after the trial court granted leave to appellants to amend their answers, appellee sought leave to amend her complaint in response. Her third amended complaint would have added an allegation that in January 2006, less than four years before the filing of the initial complaint in 2008, Everhart had returned to Coshocton Hospital for a suspected kidney stone. Although the 2003 x-ray film and report of the opacity in his lung remained a part of his medical records, he still was not told of the opacity or instructed to follow up with his physician about that

---

8. The litigation began with a complaint filed on January 25, 2008, and that complaint was amended in October 2008 and August 2009 to add parties. The allegations remained substantially the same.

finding. The third amended complaint would also have included allegations about appellants' continuing failure to notify Everhart of the issue, to create a relevant discrepancy report, and to notify Dr. Hamza, the physician who had been in charge of Everhart's follow-up care.

{¶ 94} On December 11, 2020, despite having allowed appellants' belated amendments to add a previously unraised affirmative defense, the trial court denied appellee leave to amend her allegations to account for that belated and previously unraised defense by way of a third amended complaint. The trial court justified its denial by stating that appellee had waited too long to amend, that the appellants would be prejudiced, and that appellee had "offered no reason why she * * * waited [so] long to amend her complaint," despite the appellants' having asserted the new defense after nearly a decade of litigation.

{¶ 95} The following month, the trial court granted Dr. Mendiola's motion for judgment on the pleadings. The court concluded that the allegations in appellee's *second* amended complaint did not show a continuing course of malpractice and that the treatment date for the purposes of the statute of repose was December 21, 2003. The trial court did not consider or engage with the allegations in the proposed *third* amended complaint, which alleged a continuing course of malpractice. And the court concluded that the medical-claims statute of repose applied to appellee's wrongful-death claim because the wrongful-death and loss-of-consortium claims arose from the medical diagnosis, care, or treatment of Everhart. The trial court did not address the other appellants' motions for judgment on the pleadings, but upon granting Dr. Mendiola's motion, the court certified that there was no just reason for delay under Civ.R. 54(B).

{¶ 96} As the majority notes, the case is now before us as a jurisdictional appeal and based on a question certified by the Tenth District: "Does the statute of repose for medical claims, set forth under R.C. 2305.113(C), apply to statutory

wrongful death claims?" *See* 167 Ohio St.3d 1441, 2022-Ohio-2162, 189 N.E.3d 816.

### III. ANALYSIS

#### A. The Standard and the Need to Dismiss as Improvidently Accepted

{¶ 97} In *Reister v. Gardner*, we recently held:

> Our review of a judgment on the pleadings is de novo. *New Riegel Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Eng., Inc.*, 157 Ohio St.3d 164, 2019-Ohio-2851, 133 N.E.3d 482, ¶ 8. Dismissal is appropriate under Civ.R. 12(C) when (1) the court construes as true, and in favor of the nonmoving party, the material allegations in the complaint and all reasonable inferences to be drawn from those allegations and (2) it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996).

164 Ohio St.3d 546, 2020-Ohio-5484, 174 N.E.3d 713, ¶ 17. At the outset, the trial court's exercise of discretion is open to question when it allowed defendants-appellants to assert new, unraised affirmative defenses after nearly a decade of litigation, while simultaneously denying plaintiff-appellee the right to amend her complaint to address the belated defenses. The trial court has prevented us from justly determining whether the alleged wrongdoing by appellants was within four years of the filing of the action. We cannot with integrity review this case, and that is why I would, in the first instance, dismiss the case as having been improvidently accepted.

{¶ 98} However, *if* we consider, which today we do, the certified question about the meaning of the statutes, I agree with the majority that our review is de

novo. *See State v. Pountney*, 152 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶ 20 (questions of statutory interpretation are reviewed de novo). Additionally, I note that " 'in ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.' " *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, 170 N.E.3d 842, ¶ 18, quoting *K-Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988).

### B. Whether the Wrongful-Death Action Was Timely Filed

{¶ 99} No one disputes that on December 21, 2003, Everhart was involved in an automobile accident and was transported to Coshocton Hospital. As part of his treatment, Everhart's chest was x-rayed. That image showed an "increased opacity" in the right upper lobe of his right lung. This finding should have, but did not, result in notification to Everhart and medical follow-up to determine whether the abnormality was malignant. According to the allegations in the complaint, the opacity was, in fact, lung cancer, which would have been treatable at that time, permitting Everhart's survival from the disease. However, because of the alleged negligence of appellants, Everhart was transferred to The Ohio State University Medical Center without the x-ray records and without follow-up instructions. Appellee alleged that this negligence prevented Everhart from learning of the cancer until his CT scan in August 2006, almost three years later, when the disease was beyond remedy. Everhart died of lung cancer on October 28, 2006. It is likewise undisputed that appellee commenced this litigation for medical malpractice and wrongful death on January 25, 2008. The question is whether the wrongful-death action was timely filed.

{¶ 100} R.C. Chapter 2125 governs wrongful-death actions. R.C. 2125.01 provides:

When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued * * * shall be liable to an action for damages, notwithstanding the death of the person injured * * *.

{¶ 101} R.C. 2125.02 provides:

(A)   Except as provided in this division, a civil action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent.

* * *

(C)(1)   The jury, or the court if the civil action for wrongful death is not tried to a jury, may award damages authorized by division (D) of this section, as it determines are proportioned to the injury and loss resulting to the beneficiaries described in division (A) of this section by reason of the wrongful death and may award the reasonable funeral and burial expenses incurred as a result of the wrongful death.

* * *

(D)   Compensatory damages may be awarded in a civil action for wrongful death and may include damages for the following:

(1)  Loss of support from the reasonably expected earning capacity of the decedent;

(2)  Loss of services of the decedent;

(3)  Loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, suffered by the surviving spouse, dependent children, parents, or next of kin of the decedent;

(4)  Loss of prospective inheritance to the decedent's heirs at law at the time of the decedent's death;

(5)  The mental anguish incurred by the surviving spouse, dependent children, parents, or next of kin of the decedent.

{¶ 102} In addition to defining the cause of action, R.C. Chapter 2125 provides limitations periods, including a traditional statute of limitations, a statute of repose, and a saving statute.  The limitations period is set forth in R.C. 2125.02(F)(1) and provides: "Except as provided in division [(F)(2)] of this section, a civil action for wrongful death shall be commenced within two years after the decedent's death."

{¶ 103} The statute of repose is set forth in R.C. 2125.02(F)(2)(a):

Except as otherwise provided in divisions (F)(2)(b), (c), (d), (e), (f), and (g) of this section or in section 2125.04 of the Revised Code, no cause of action for wrongful death involving a product liability claim shall accrue against the manufacturer or supplier of a product later than ten years from the date that the product was delivered to its first purchaser or first lessee who was not engaged in a business in which the product was used as a component in the

production, construction, creation, assembly, or rebuilding of another product.

{¶ 104} Then, the saving statute makes clear that failure otherwise than upon the merits allows a new a wrongful-death action to be commenced within one year:

In every civil action for wrongful death that is commenced or attempted to be commenced within the time specified by division (F)(1) or (F)(2)(c), (d), (e), (f), or (g) of section 2125.02 of the Revised Code, if a judgment for the plaintiff is reversed or the plaintiff fails otherwise than upon the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the personal representative of the plaintiff may commence a new civil action for wrongful death within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period specified by any of those divisions, whichever occurs later.

R.C. 2125.04.

{¶ 105} Under the statutes governing wrongful death, the statute of repose does not apply to appellee's claim because it is not a product-liability claim. R.C. 2125.02(F)(2). Consequently, Everhart's estate had two years from the date of his death to file the claim. R.C. 2125.02(F)(1). Because he died on October 28, 2006, and the case was commenced on January 25, 2008, the wrongful-death claim was clearly timely. Appellants and the majority assert, however, that appellee's claim was untimely because even though it was filed within the statute of limitations for

wrongful-death actions and the statute of repose for wrongful-death actions is inapplicable, it was brought outside the statute of repose for medical claims.

## C. Whether an Otherwise Timely Wrongful-Death Claim Is Governed by the Medical-Malpractice Statute of Repose

{¶ 106} R.C. 2305.113 sets forth a one-year statute of limitations and a four-year statute of repose for medical claims:

(A) Except as otherwise provided in this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued.

(B)(1) If prior to the expiration of the one-year period specified in division (A) of this section, a claimant who allegedly possesses a medical, dental, optometric, or chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given.

* * *

(C) Except as to persons within the age of minority or of unsound mind as provided by section 2305.16 of the Revised Code, and except as provided in division (D) of this section, both of the following apply:

(1) No action upon a medical, dental, optometric, or chiropractic claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim.

(2) If an action upon a medical, dental, optometric, or chiropractic claim is not commenced within four years after the

occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim, then, any action upon that claim is barred.

(D)(1)    If a person making a medical claim, dental claim, optometric claim, or chiropractic claim, in the exercise of reasonable care and diligence, could not have discovered the injury resulting from the act or omission constituting the alleged basis of the claim within three years after the occurrence of the act or omission, but, in the exercise of reasonable care and diligence, discovers the injury resulting from that act or omission before the expiration of the four-year period specified in division (C)(1) of this section, the person may commence an action upon the claim not later than one year after the person discovers the injury resulting from that act or omission.

(2)  If the alleged basis of a medical claim, dental claim, optometric claim, or chiropractic claim is the occurrence of an act or omission that involves a foreign object that is left in the body of the person making the claim, the person may commence an action upon the claim not later than one year after the person discovered the foreign object or not later than one year after the person, with reasonable care and diligence, should have discovered the foreign object.

(3)  A person who commences an action upon a medical claim, dental claim, optometric claim, or chiropractic claim under the circumstances described in division (D)(1) or (2) of this section has the affirmative burden of proving, by clear and convincing evidence, that the person, with reasonable care and diligence, could not have discovered the injury resulting from the act or omission constituting the alleged basis of the claim within the three-year

period described in division (D)(1) of this section or within the one-year period described in division (D)(2) of this section, whichever is applicable.

R.C. 2305.113(E) then defines "medical" claims broadly:

> As used in this section:
>
> * * *
>
> (3) "Medical claim" means any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes the following:
>
> (a) Derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person.

{¶ 107} R.C. 2305.113(E)(7) goes on to explain:

> "Derivative claims for relief" include, but are not limited to, claims of a parent, guardian, custodian, or spouse of an individual who was the subject of any medical diagnosis, care, or treatment, dental diagnosis, care, or treatment, dental operation, optometric diagnosis, care, or treatment, or chiropractic diagnosis, care, or

treatment, that arise from that diagnosis, care, treatment, or operation, and that seek the recovery of damages for any of the following:

(a) Loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, or any other intangible loss that was sustained by the parent, guardian, custodian, or spouse;

(b) Expenditures of the parent, guardian, custodian, or spouse for medical, dental, optometric, or chiropractic care or treatment, for rehabilitation services, or for other care, treatment, services, products, or accommodations provided to the individual who was the subject of the medical diagnosis, care, or treatment, the dental diagnosis, care, or treatment, the dental operation, the optometric diagnosis, care, or treatment, or the chiropractic diagnosis, care, or treatment.

{¶ 108} While we have not previously considered whether the medical statute of repose applies to wrongful-death actions with a medical-negligence origin, we have held that the statute of limitations for malpractice actions does not apply in wrongful-death actions, even if the death was caused by medical malpractice. *Klema v. St. Elizabeth's Hosp. of Youngstown*, 170 Ohio St. 519, 166 N.E.2d 765 (1960). In so doing, we stated, "Where an alleged negligent act was such as would have, if death had not ensued, entitled a person to maintain an action therefor, a cause of action for wrongful death exists in such decedent's personal representative, and such cause of action for wrongful death cannot be defeated merely by reason of the bar of limitation which would have been applicable to decedent's action." *Id.* at paragraph one of the syllabus. We reasoned:

"Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person, and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries, and is confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong but a single recovery for a double wrong."

*Id.* at 521, quoting *St. Louis, Iron Mountain & S. Ry. Co. v. Craft*, 237 U.S. 648, 658, 35 S.Ct. 704, 59 L.Ed. 1160 (1915).

{¶ 109} When *Klema* was decided, the malpractice statute of limitations was simpler than it is today, merely providing: "An action for * * * malpractice * * * shall be brought within one year after the cause thereof accrued." *See also* former R.C. 2305.11, Am.Sub.H.B. No. 989, 135 Ohio Laws, Part II, 982. The first iteration of language expansively defining the term "medical claim" was enacted by the General Assembly in 1975. *See* former R.C. 2305.11.[9] Thus, when *Klema*

---

9. The statute was amended as follows:

Sec. 2305.11. (A) An action for libel, slander, assault, battery, malicious prosecution, false imprisonment, or malpractice, INCLUDING AN ACTION FOR MALPRACTICE AGAINST A PHYSICIAN OR A HOSPITAL or upon a statute for a penalty or forfeiture, shall be brought within one year after the cause thereof accrued, provided that an action by an employee for the payment of unpaid minimum wages, unpaid overtime compensation, or liquidated damages by reason of the nonpayment of minimum wages or overtime compensation, shall be brought within two years after the cause thereof accrued.

IF A WRITTEN NOTICE, PRIOR TO THE EXPIRATION OF TIME CONTAINED IN THIS DIVISION, IS GIVEN TO ANY PERSON IN A MEDICAL MALPRACTICE CASE THAT AN INDIVIDUAL IS PRESENTLY CONSIDERING BRINGING AN ACTION AGAINST THAT PERSON RELATING TO PROFESSIONAL SERVICES PROVIDED TO THAT INDIVIDUAL, THEN AN ACTION BY THAT INDIVIDUAL AGAINST

was decided, the limitations period did not textually encompass claims other than "malpractice." But now there exist broad definitions of "medical claim" and "derivative claims for relief," so the medical-claims limitations statute might conceivably encompass wrongful-death actions against doctors or hospitals that arose out of the medical diagnosis, care, or treatment of the decedent. *See* R.C. 2305.113(E). Yet, this court has continued to apply *Klema* to distinguish medical-malpractice claims from wrongful-death claims in the context of limitations for filing. *See Koler v. St. Joseph Hosp.*, 69 Ohio St.2d 477, 478-481, 432 N.E.2d 821 (1982). In *Koler*, this court reasoned:

> [A]ppellants observe that R.C. 2305.11(D)(3) defines the term "medical claim" as "* * * any claim asserted in any civil action against a physician or hospital arising out of the diagnosis, care or treatment of any person." 136 Ohio Laws 2811. Appellants reason that a wrongful death claim against a physician or hospital seeking

---

THAT PERSON MAY BE COMMENCED AT ANY TIME WITHIN ONE HUNDRED EIGHTY DAYS AFTER THAT NOTICE IS GIVEN.

(B) IN NO EVENT SHALL ANY MEDICAL CLAIM AGAINST A PHYSICIAN OR A HOSPITAL BE BROUGHT MORE THAN FOUR YEARS AFTER THE ACT OR OMISSION CONSTITUTING THE ALLEGED MALPRACTICE OCCURRED. THE LIMITATIONS IN THIS SECTION FOR FILING SUCH A MALPRACTICE ACTION AGAINST A PHYSICIAN OR HOSPITAL APPLY TO ALL PERSONS REGARDLESS OF LEGAL DISABILITY AND NOTWITHSTANDING SECTION 2305.16 OF THE REVISED CODE, PROVIDED THAT A MINOR WHO HAS NOT ATTAINED HIS TENTH BIRTHDAY SHALL HAVE UNTIL HIS FOURTEENTH BIRTHDAY IN WHICH TO FILE AN ACTION FOR MALPRACTICE AGAINST A PHYSICIAN OR HOSPITAL.

* * *

(D) AS USED IN THIS SECTION:

* * *

(3) "MEDICAL CLAIM" MEANS ANY CLAIM ASSERTED IN ANY CIVIL ACTION AGAINST A PHYSICIAN OR HOSPITAL ARISING OUT OF THE DIAGNOSIS, CARE, OR TREATMENT OF ANY PERSON.

(Capitalization sic.) Am.Sub.H.B. No. 682, 136 Ohio Laws, Part II, at 2810-2811.

damages because of the death of the patient is a "medical claim." Furthermore, appellants allude to the following portion of Am.Sub.H.B. No. 682: "(B) In no event shall any medical claim against a physician or hospital be brought more than four years after the act or omission constituting the alleged malpractice occurred." 136 Ohio Laws 2810. Appellants urge that we construe this provision as evidencing a legislative intent that "malpractice" and "medical claims" are interchangeable terms under R.C. 2305.11 as amended. Therefore, appellants conclude that all "medical claims," including those for wrongful death, fall within the one-year statute of limitations.

As we noted in *Lombard v.* [*Good Samaritan*] *Medical Center* (1982), 69 Ohio St.2d 471, [433 N.E.2d 162,] this provision in R.C. 2305.11(B) is confusing. Yet, the operative language of R.C. 2305.11(A) remains clear: "An action for * * * *malpractice * * * * shall be brought within one year * * *." (Emphasis added.) We must construe statutes of limitations narrowly within the statutory language. *Chisnell v. Ozier Co.* (1942), 140 Ohio St. 355, [44 N.E.2d 464,] paragraph eight of the syllabus. "The *statute of limitations contained in R.C. 2305.11(A) is limited to the areas specifically enumerated therein and to the common-law definition of 'malpractice.'* " (Emphasis added.) *Hocking Conservancy Dist. v. Dodson-Lindblom Assoc.* (1980), 62 Ohio St.2d 195[, 404 N.E.2d 164]. Whatever confusion there may be regarding the relative meanings of the terms "medical claim" and "malpractice" within the rest of R.C. 2305.11, for statute of limitations purposes, Am.Sub.H.B. No. 682 has not changed the meaning of "malpractice." "We do not believe the purpose of the General

Assembly in adopting R.C. 2305.11(B) while leaving R.C. 2305.11(A) virtually unchanged was to alter this court's prior interpretations of the medical malpractice statute of limitations * * * ." *Vance v. St. Vincent Hospital* (1980), 64 Ohio St.2d 36, 41[, 414 N.E.2d 406]. Therefore, absent clear legislation to the contrary, this court's holding in *Klema* controls.

(Ellipses added in *Koler*.) *Id.* at 480-481. In short, despite the broader definition of "medical claim" added to the malpractice statute by the General Assembly in 1975, this court has continued to hold that wrongful-death actions predicated on medical negligence are governed by the wrongful-death statute of limitations.

{¶ 110} Today the majority focuses on the generic language of the medical-malpractice-statute definition of statute of repose and vastly broadens its application, even though the *only* statute of repose in the wrongful-death statute is related not to medical malpractice, but to product-liability claims. The majority seems to find persuasive the argument that the simple, generic definition of "medical claim" in R.C. 2305.113(E)(3) encompasses some wrongful-death actions, even though the overall structure of the statute simply does not support it. Lower courts have split on the question,[10] but nowhere in the Ohio Revised Code is it evident that the legislature intended for wrongful death by alleged medical

---

10. *Compare McCarthy v. Lee*, 10th Dist. Franklin No. 21AP-105, 2022-Ohio-1033, ¶ 34; *Maxwell v. Lombardi*, 10th Dist. Franklin No. 21AP-556, 2022-Ohio-1686, ¶ 19; *Wood v. Lynch*, 10th Dist. Franklin No. 20AP-289, 2022-Ohio-1381, ¶ 19; *Ewing v. UC Health*, 2022-Ohio-2560, 193 N.E.3d 1132, ¶ 31 (1st Dist.); *Davis v. Mercy St. Vincent Med. Ctr.*, 2022-Ohio-1266, 190 N.E.3d 77, ¶ 63 (6th Dist.) (all holding that the medical claims statute of repose is inapplicable to medically based wrongful-death claims) *with Kennedy v. W. Res. Senior Care*, 2023-Ohio-264, 207 N.E.3d 143, ¶ 32 (11th Dist.); *Martin v. Taylor*, 11th Dist. Lake No. 2021-L-046, 2021-Ohio-4614, ¶ 46; *Mercer v. Keane*, 2021-Ohio-1576, 172 N.E.3d 1101, ¶ 40 (5th Dist.); *Smith v. Wyandot Mem. Hosp.*, 2018-Ohio-2441, 114 N.E.3d 1224, ¶ 27 (3d Dist.) (holding that the medical-claims statute of repose applies to medically based wrongful-death claims).

negligence to be a subject of the medical statutes of limitations that apply to persons still living, including the statute of repose.

### D. The Majority's Application of the Medical-Malpractice Statute of Repose to the Wrongful-Death Cause of Action Unconstitutionally Closes the Courthouse to Litigants

{¶ 111} The Ohio Constitution guarantees: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Article I, Section 16, Ohio Constitution. Over 35 years ago, recognizing that this constitutional provision meant that the rights of the people to be compensated for wrongs done to them was superior to the legislature's desire to limit insurance-claim payouts, we struck down the statute of repose enacted in 1975 by Am.Sub.H.B. No. 682, 136 Ohio Laws, Part II, at 2810-2811. We held that the statute of repose "as applied to bar the claims of medical malpractice plaintiffs who did not know or could not reasonably have known of their injuries, violates the right-to-remedy provision of Section 16, Article I of the Ohio Constitution." *Hardy v. VerMeulen*, 32 Ohio St.3d 45, 512 N.E.2d 626 (1987), syllabus, *overruled by Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, syllabus. There, we reasoned:

> Our courts are to be open to those seeking remedy for injury to person, property, or reputation.
>
> As this court said in *Kintz v. Harriger* (1919), 99 Ohio St. 240, 247, 124 N.E. 168, 170:
>
> "Manifestly, when the constitution of the state declares and defines certain public policies, such public policies must be paramount, though a score of statutes conflict and a multitude of judicial decisions be to the contrary.

"*No general assembly is above the plain, potential provisions of the constitution, and no court, however sacred or powerful, has the right to declare any public policy that clearly contravenes or nullifies the rights declared in the constitution.*" (Emphasis added.)

The holding in *Kintz* reads as follows:

"1. The Constitution of Ohio, Bill of Rights, Section 16, provides, among other things, 'Every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law.'

"2. It is the primary duty of courts to sustain this declaration of right and remedy, wherever the same has been wrongfully invaded." *Id*. at paragraphs one and two of the syllabus.

*See, also*, *Byers v. Meridian Printing Co.* (1911), 84 Ohio St. 408, 95 N.E. 917, paragraph two of the syllabus (a legislative enactment changing the presumption and burden of proof as to malice in defamation cases was found unconstitutional and void under Section 16, Article I); *Williams v. Marion Rapid Transit, Inc.* (1949), 152 Ohio St. 114, 39 O.O. 433, 87 N.E.2d 334 (denial of remedy to an unborn viable child violated Section 16, Article I); *Primes v. Tyler* (1975), 43 Ohio St.2d 195, 205, 72 O.O.2d 112, 117, 331 N.E.2d 723, 729 (the Ohio Guest Statute was found in violation of Section 16, Article I, "* * * in that it closes the courts and denies a remedy by due course of law to some but not all the people of this state * * *").

In *Lafferty v. Shinn* (1882), 38 Ohio St. 46, 48, this court recited Section 16, Article I and said that "* * * it is not within the power of the legislature to abridge the period within which an

existing right may be so asserted as that there shall not remain a reasonable time within which an action may be commenced." If the legislature may not constitutionally enact an unreasonable statute of limitations, it follows that the legislature cannot deprive one of a right before it accrues.

(Ellipsis added in *Hardy* and footnote omitted.) *Id.* at 46-47; *see also, e.g.*, *Brennaman v. R.M.I. Co.*, 70 Ohio St.3d 460, 466-467, 639 N.E.2d 425 (1994) (a construction statute of repose that terminated liability before claims accrue violated the right-to-remedy provision of the Ohio Constitution); *Burgess v. Eli Lilly & Co.*, 66 Ohio St.3d 59, 60-63, 609 N.E.2d 140 (1993) (a statute of limitations that deemed actions accrued before they could be filed with a realistic chance of surviving a motion to dismiss violated the right-to-remedy provision of the Ohio Constitution).

{¶ 112} Ohio's statutes of repose for medical and other negligence emerged around the year 1975, when the legislature recognized what was characterized at the time as an insurance-industry "crisis." Over time, this characterization has been heavily criticized.[11] Numerous publications have demonstrated the relation of

---

11. *See Mominee v. Scherbarth*, 28 Ohio St.3d 270, 280-281, 503 N.E.2d 717 (1986) (Celebrezze, C.J., concurring), in which one member of this court suggested that the insurance industry had created its own crisis to justify legislation with a similar constricting effect on aggrieved parties' access to the state's courts when discussing tort-reform.

> As one scholarly article explains, "[p]remiums seem to be less of a financial burden when compared to total health care spending. * * * Even after the rapid growth in premiums during the mid-1970's, malpractice insurance costs seem to be about one percent of total health care spending since 1976." Bovbjerg, Koller & Zuckerman, *Information on Malpractice: A Review of Empirical Research on Major Policy Issues* (Spring 1986), 49 Law and Contemp. Probs. 85, 93 (hereinafter "*Empirical Research*").
>
> Although the medical profession and its insurers insist that a new crisis in the affordability of malpractice insurance is upon us, a more dispassionate analyst of this assertion has recently observed that "whether insurance is in fact

cyclical insurance-rate emergencies of the 1970s, 1980s, and 1990s to market conditions, not tort litigation. Americans for Insurance Reform, *Medical Malpractice Insurance: Stable Losses/Unstable Rates* 2-6 (Oct. 10, 2002),

---

unaffordable remains to be demonstrated. It is noteworthy that despite the continued increase in premium costs, the ratio of such costs to average provider income has not changed substantially. The AMA's [American Medical Association's] own surveys show that average premium costs as a percentage of physician's gross income were about 3.7% in 1983, down from 4.4% in 1976 and about the same as in 1979." Robinson, *The Medical Malpractice Crisis of the 1970's: A Retrospective* (Spring 1986), 49 Law and Contemp. Probs. 5, 31.

Health care providers also claim that judicial erosion of the legislated malpractice reforms has hurt consumers by forcing physicians to practice costly defensive medicine. Although this contention may have some factual basis, noted authorities have found it to be overstated.

"* * * In 1985 the American Medical Association estimated that the annual cost of defensive medicine now exceeds $15 billion. Even in the context of an annual health care budget that exceeds $375 billion, a cost of $15 billion for unproductive medical practices would be reason for grave concern. It would be, that is, if there were good reason to believe that costs of such magnitude are being incurred.

"In fact, evidence of defensive medicine is notoriously unreliable. The AMA's estimate was based on the most casual empirical technique—soliciting physicians' subjective opinions through an AMA survey. The basis for those opinions in this particular survey is not revealed; however, if earlier reports of defensive medicine by health care providers are representative of the rationale underlying those opinions, one must be deeply skeptical." Robinson, *Rethinking the Allocation of Medical Malpractice Risks Between Patients and Providers* (Spring 1986), 49 Law and Contemp. Probs. 173, 177. *See, also, Empirical Research*, *supra*, at 108-109.

Finally, the medical profession decries the "long-tail" liability which may result from striking the statute of repose as to minors, and claims that this will increase the cost of malpractice insurance. Yet the cyclical nature of the insurance industry itself also contributes to the increase in malpractice insurance premiums. One fifteen-year study concludes as follows:

"The insurance industry's natural behavior contributes to the continuing cycles of 'crisis' and 'remission.' The high investment yields of the early 1980's and the influx of new carriers led to continued price cutting (below actuarially appropriate levels) through 1983. In 1984, the strong dollar reduced the amount of insurance and reinsurance capacity available from sources outside the United States (notably London), and emerging losses in the United States finally forced companies to raise premiums." Posner, *Trends in Medical Malpractice Insurance 1970-1985* (Spring 1986), 49 Law and Contemp. Probs. 37, 48.

(Ellipses and brackets sic.) *Id*. at 280-281 (Celebrezze, C.J., concurring).

http://www.centerjd.org/air/StableLosses.pdf (accessed June 21, 2023) [https://perma.cc/FML2-MAUV]. That is, rates are driven principally by how profitably (or not) insurance companies can invest premiums in the broader market, not on payouts. *Id.* at 2-3. Thus, insurance rates were shown to rise when the broader market falls and the reverse happens when the market improves. *Id.* at 3. Even a publication of the American College of Surgeons from last year states that despite the assertion by the insurance industry that high-dollar plaintiffs' verdicts drove premium increases,

> an extensive study that examined the relationship between medical liability premiums and the medical liability system during previous crises demonstrated that damage awards played only a limited role in premium spikes that occurred in the early 2000s.

> The study examined the three crises in premiums that occurred in Illinois in the mid-1980s, the mid-1990s, and the early 2000s. The findings showed that paid claims rates rose sharply between 1980 and 1985. The paid claims then leveled off between 1986 and 1993, and then began a sustained period of decline. By 2010, claims were 75% lower than at the peak in 1991. Claims were lower despite the payout per claim increasing steadily over the same period. This adjustment was interpreted as evidence of the disappearance of small claims and those involving less severe injuries.

> In summary, the study of statewide data indicated the total direct costs (awards to plaintiffs plus defense costs) attributable to medical liability litigation increased between 1980 and 1992, with a particularly dramatic increase in 1991. Total direct costs then

declined steadily except for a modest increase between 2000 and 2002.

Thus, of the three previous hard markets for liability premiums in Illinois, only the first crisis was temporally related to a major increase in liability claims payouts. This evidence indicates that should a new hard market be imminent, it should not be attributed to the recent increase in claims with payouts exceeding tens of millions of dollars, as some industry executives have suggested.

(Footnotes omitted.) Bailey, *Is There a Correlation between Physician Employment and Liability Premiums?*, Bulletin of the American College of Surgeons (Feb. 4, 2022), https://bulletin.facs.org/2022/02/is-there-a-correlation-between-physician-employment-and-liability-premiums/ (accessed June 21, 2023) [https://perma.cc/W6S2-LECN]. Nor is this a crisis point for physicians or hospitals, as the same report notes that on "average, across all specialties and all states, liability premiums represent approximately 3.2% of practice income," *id*., which is roughly what it was in 1986, when *Mominee* was released, *id.*, 28 Ohio St.3d at 280, 503 N.E.2d 717 (Celebrezze, C.J., concurring).

{¶ 113} Despite these facts, in 2012 we "fully abdicate[d] our solemn duty to enforce and protect constitutional rights afforded citizens since the beginning of statehood." *Ruther*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, at ¶ 44 (Pfeifer, J., dissenting). This court overruled *Hardy*, 32 Ohio St.3d 45, 512 N.E.2d 626, and concluded that the statute of repose could bar medical-malpractice claims by plaintiffs even when the statute of repose had run before the claims accrued. *Ruther* at ¶ 21, 35. Today, we again abdicate our constitutional responsibility and make things worse yet for Ohioans, some of whose families will never be able to

prove their deceased loved one died because of medical negligence if they die after this court-created statute of repose has expired.

{¶ 114} The statute of repose is difficult enough to manage in the case of a medical claim when the patient survives but may not be fully aware of the malpractice-induced injury. But a wrongful-death action does not accrue until the wrongful act (i.e., malpractice) actually causes death. *Collins v. Sotka*, 81 Ohio St.3d 506, 509, 692 N.E.2d 581 (1998). It is not unusual for a medical mistake, particularly a misdiagnosis, to result in death years after it is committed. *See Wood v. Lynch*, 10th Dist. Franklin No. 20AP-289, 2022-Ohio-1381, ¶ 4-6 (patient last treated by the appellee hospital in 2011 and died on September 4, 2016); *McCarthy v. Lee*, 10th Dist. Franklin No. 21AP-105, 2022-Ohio-1033, ¶ 3-4 (patient treated in 2010 and 2015 and died on December 2, 2022); *Martin v. Taylor*, 11th Dist. Lake No. 2021-L-046, 2021-Ohio-4614, ¶ 11-14 (patient treated 2011 through 2014 and died on September 2, 2017).

{¶ 115} In *Mercer v. Keane*, for example, the complaint alleged that Bradley Mercer was examined in December 2012, at which time a clearly visible mass was evident on multiple images near his sacrum/coccyx, yet the doctor failed to diagnose it. 2021-Ohio-1576, 172 N.E.3d 1101, ¶ 2 (5th Dist.). By 2015, the mass was found to have greatly increased in size and had become an inoperable sacral chordoma. *Id.* In 2020, during trial preparation on a timely filed medical-malpractice case, Mercer succumbed to metastatic chordoma of the pelvis and sacrum. *Id.* at ¶ 4. His estate was successfully substituted as a party, and it amended the claims from medical malpractice to wrongful death. *Id.* at ¶ 5. However, even though it was an amendment and even though the medical appellants were already litigating the claims, the action was dismissed as time barred because the "new" claim for wrongful death was filed more than four years after the 2012 misdiagnosis. *Id.* at ¶ 5-7. That result was affirmed on appeal by the Fifth District Court of Appeals. *Id.* at ¶ 5-7, 43.

**{¶ 116}** As a further example, in *McCarthy*, Kathleen McCarthy was misdiagnosed with hemorrhoids in 2010 and 2015 when, in fact, she had colon cancer. *Id.* at ¶ 3-4. When she was accurately diagnosed with colon cancer in 2017, she discovered the injury caused by the misdiagnosis, and therefore, her medical-malpractice cause of action had accrued within the medical statute of repose. A complaint was filed in 2019. *Id.* at ¶ 2, 6.[12] However, McCarthy did not die of her terminal cancer until 2022, so her wrongful-death claim did not accrue until seven years after her last misdiagnosis. Under the majority's application of the medical-malpractice statute of repose to wrongful-death claims, her family would not now be able to bring a wrongful-death claim, even though the claim just accrued and even though the medical provider in question was originally sued within the statute of repose for a medical-malpractice action. McCarthy's situation illustrates another bizarre and ghoulish consequence of the majority's view—when McCarthy commenced her malpractice action, she and her husband also brought an unaccrued wrongful-death claim just in case she died (which, unfortunately, she did). *McCarthy* at ¶ 2, 9. To preserve wrongful-death claims under the majority's decision, medical-malpractice plaintiffs will now routinely need to consider bringing unaccrued wrongful-death claims with their prospective heirs in case they die from the medical malpractice during the pendency of the suit beyond the medical statute of repose. Yet in so doing, they will risk dismissal of such claims because, of course, still being alive, no wrongful death will yet have occurred. This is a result that is not "just and reasonable" or, for that matter, legally "feasible of execution." R.C. 1.47(C) and (D).

---

12. McCarthy's attorney voluntarily dismissed the case and refiled in 2020 under the saving statute. *McCarthy* at ¶ 2. But our decision in *Wilson v. Durrani*, 164 Ohio St.3d 419, 2020-Ohio-6827, 173 N.E.3d 448, holding that the statute of repose is not extended by the saving statute, rendered her refiling of the medical-malpractice claim outside the statute of repose. *McCarthy* at ¶ 29-30.

{¶ 117} These results are farcical. They are a product of an insurance-industry "crisis" with dubious origins. We should neither feign helplessness nor concoct a statute of repose where the legislature has provided none. This is an injustice, because applying the legislation in this way flouts the Ohio Constitution's imperative that "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Article I, Section 16, Ohio Constitution.

{¶ 118} The complaint here alleges that on December 21, 2003, Everhart should have been diagnosed with lung cancer. Instead, he died from it, without timely medical treatment, on October 28, 2006. The majority's unreasonable, unconstitutional, and unjust analysis today callously compounds that misfortune in wrongful-death actions, further depriving Everhart's loved ones and others like them of compensation for all that he and other loved ones might have contributed to their lives.

## IV. CONCLUSION

{¶ 119} Because the trial court permitted the assertion of affirmative defenses after nearly a decade of litigation, yet simultaneously prevented an amendment to the complaint that would have addressed such belated defenses, we cannot fairly consider whether the alleged wrongdoing by appellants was within four years of filing the action. Thus, in the first instance, I would dismiss the appeal as having been improvidently accepted.

{¶ 120} To the extent that we consider the merits of the case, no one disputes that this wrongful-death action was brought within the wrongful-death statute of limitations and that the wrongful-death statute of repose is inapplicable to deaths caused by medical malpractice. While the majority focuses on the broad definition of "medical claim" in order for Machelle Everhart to bring a wrongful-death claim within the medical statute of repose, we have repeatedly held that

claims for medical negligence resulting in injury to a patient are fundamentally different from claims based on medical negligence resulting in death. Though the claims originate in the same negligence, they do not overlap. One is for the wrong to the injured patient and is confined to the personal loss and suffering before death. The other claim is for the wrong to those left behind who survive the decedent, being confined to their loss as a result of the injured person's death. For this reason, we have previously held that they are different claims and governed by different limitations periods in the Revised Code. And, of course, not only are the claims different in fact, but under the Revised Code, each has its own statute of limitations and statute of repose.

{¶ 121} Importantly, a wrongful-death action does not accrue until the wrongful act (in this case, medical misdiagnosis) causes death. This means that the majority's reasoning and application will now cause the statute of repose to run in many cases before the stricken patient even manages to die, preventing his or her relatives from bringing a wrongful-death suit unless they macabrely bring it before their loved one dies. Interpreting the law in this incongruous and patently oppressive manner is abhorrent and also violates the Constitution's command that "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Article I, Section 16, Ohio Constitution. Rather than focus on our role as protectors of the Ohio Constitution and the individual rights it enumerates, this court unconstitutionally applies a medical-malpractice statute of repose to a wrongful-death action, despite the fact that the legislature itself provided no statute of repose for wrongful-death claims of this type and sets forth a different statute of limitations for medical-malpractice claims.

{¶ 122} I would dismiss this case as having been improvidently accepted because of the failure of the trial court to permit an amended complaint in response

to a decade-later amended answer, but because no such dismissal is in the offing, I would affirm on the merits. Since the majority does neither, I dissent.

—————————————

Colley Shroyer & Abraham Co., L.P.A., and David I. Shroyer, for appellee.

Brant E. Poling and Zachary R. Hoover; and Collins, Roche, Utley & Garner, L.L.C., and David L. Lester, for appellant Coshocton County Memorial Hospital.

Frederick A. Sewards and Patrick F. Smith; and Collins, Roche, Utley & Garner, L.L.C., and David L. Lester, for appellant Mohamed Hamza.

Reminger Co., L.P.A., David H. Krause, Thomas N. Spyker, and Melvin Davis; and Taft Stettinius & Hollister, L.L.P., and Aaron M. Herzig, for appellant Joseph J. Mendiola.

The Mellino Law Firm L.L.C., and Calder Mellino; and Flowers & Grube, Louis E. Grube, Paul W. Flowers, and Melissa A. Ghrist, urging affirmance for amicus curiae Ohio Association for Justice.

Reminger Co., L.P.A., Holly Marie Wilson, Brianna Marie Prislipsky, and Thomas A. Prislipsky, urging reversal for amicus curiae Thomas Keane.

Squire Patton Boggs (U.S.), L.L.P., Lauren S. Kuley, and G. Luke Burton, urging reversal for amici curiae Ohio Hospital Association, Ohio State Medical Association, and Ohio Osteopathic Association.

Sean McGlone, urging reversal for amicus curiae Ohio Hospital Association.

—————————————